## UNITED STATES v. MOYNIHAN.

(Circuit Court of Appeals, Third Circuit. July 7, 1919.)

No. 2460.

1. LARCENY ☞1—INTERSTATE COMMERCE.

In a prosecution for violating Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604), making it a crime to steal, or unlawfully take, carry away, or conceal, etc., any goods or chattels moving as part of an interstate or foreign shipment, etc., the statute will be construed to apply to the case of a shipment from one point in the state to another point, where the route is in part without the state.

2. LARCENY ☞55—INTERSTATE COMMERCE—EVIDENCE.

In a prosecution under Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604), denouncing the offense of stealing, or unlawfully taking, carrying away, or concealing, or by fraud or deception obtaining from any railroad car, station house, or platform, depot, steamboat, vessel, or wharf, any goods or chattels moving as an interstate or foreign shipment, etc., where it appeared that a bale of silk was pushed from an express wagon, and it was claimed defendant attempted to place the silk in an automobile, etc., evidence *held* insufficient to show that the silk was stolen from any platform, etc.

In Error to the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Edward Moynihan was convicted of violating Act Feb. 13, 1913, making it a crime to steal or unlawfully carry away or conceal, or by fraud or deceit obtain from any railroad car, etc., any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment, and he brings error. Reversed and new trial granted.

George F. Cutley and Thomas F. A. Griffin, both of Jersey City, N. J., for plaintiff in error.

Charles F. Lynch, U. S. Atty., and Samuel I. Kessler, Asst. U. S. Atty., both of Newark, N. J.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

BUFFINGTON, Circuit Judge. On September 6, 1918, the firm of John Dunlop's Sons, at their place of business in New York city, delivered to the American Express Company a bale of silk for express carriage to their factory at Spring Valley, New York state. Spring Valley was a station of the Erie Railroad and no other railroad reached it. Having no other possible routing except by the Erie Railroad, and as that road could only be reached at its terminus in Jersey City, the express company routed the package over that road, and took it to its dumping station in New York City, preparatory to sending it by ferry to New Jersey. The proof showed the package was duly accepted and receipted for by the express company, and was delivered at the dumping station on that day. The next testimony as to the package is that on the same evening the attention of a policeman was attracted to an express wagon passing along a Jer-

sey City street, and a package, which proved to be this bale of silk, was being pushed by a pair of hands from the tailboard of the wagon. The officer was unable to see any part of the person who pushed it except his hands. This pushing out of the bale was evidently part of a concerted plan, for as it was done an automobile in which were two men approached the express wagon. One of the men jumped out, grasped the bale of silk which was being pushed out, took it in his arms, and tried to put it into the auto. He failed in the effort, dropped the bale, and both he and the man in the auto started to escape, the man who dropped the bale running up the street, and the man in the auto driving away in the car. The latter escaped. The policeman called on a soldier who was standing by to guard the bale, and himself ran after the fleeing thief, firing two shots as he pursued him. Others joined in the chase, and two men finally captured the fugitive and delivered him to the officer. He identified him as the man who had alighted from the automobile and had taken the bale of silk from the tailboard of the express wagon. The man proved to be Edward Moynihan, the defendant. In pursuance of the act of Congress of Feburary 13, 1913, c. 50, 37 Stat. 670 (Comp. St. §§ 8603, 8604), which makes it a crime to "steal or unlawfully take, carry away or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, steamboat, vessel, or wharf, with intent to convert to his own use, any goods or chattels moving as, or which are a part of, or which constitute, an interstate or foreign shipment of freight or express, or shall buy, or receive, or have in his possession any such goods or chattels, knowing the same to have been stolen," Moynihan was indicted for having in possession goods stolen from an interstate shipment, and pleaded not guilty.

Under the charge of the court, four distinct questions of fact, inter alia, were submitted to the jury as essential to be found before the defendant could be convicted: First, "that the bale was an interstate, or part of an interstate, shipment," and in determining that fact the truth of the evidence "that the only route by which shipments may be made by express from New York City, N. Y., to Spring Valley, N. Y., was by the Erie Railroad, which runs from New York City, in the state of New York, over to Jersey City, in the state of New Jersey, and then back from the state of New Jersey into the state of New York," was submitted to the jury's consideration. The second question submitted was whether the bale of silk was stolen from a platform or depot of the American Express Company in New York City. The third question was whether Moynihan had the bale of silk in his possession. The fourth was whether, if Moynihan had the bale in his possession, he knew it was stolen. In view of these exact instructions, we must accept the verdict of guilty as establishing as facts these several essential elements of the crime, if there was evidence before the jury from which they might so find. After sentence of imprisonment, Moynihan sued out this writ, and the first substantial question here involved is whether, under the facts proven and the inferences and findings the jury drew therefrom, Moynihan was guilty of violating the statute in question.

[1] The determination of that question depends on whether the

bale of silk which Moynihan, and those confederating with him, were endeavoring to steal, was included under the broad term, "any goods or chattels moving as, or which are a part of, or which constitute an interstate * * * shipment of * * * express." That the bale of silk constituted "goods and chattels" is a fact; that they were moving as and constituted a shipment of express is equally undeniable; and that the express company could only carry them to destination by taking the bale from its own dock in New York state and delivering it to a railroad's own cars at its terminus in New Jersey is also certain. Such being the unquestioned facts, it follows that the bale of silk was actually moving as an interstate shipment, and was the class of commerce Congress had power to protect from depredation in transit. It follows, therefore, that Moynihan's crime was punishable under the statute, unless we are to hold that, notwithstanding the facts found, this court shall hold that because the bale of silk started from, and was to be delivered to, points in New York state, the bale was thereby so theoretically fixed as an intrastate shipment that its compulsory interstate routings between those intrastate points did not confer an interstate character as it moved over this compulsory interstate route.

To give this act, in its application to the particular case before us, the narrow construction here contended for, would result in such disastrous consequences to the safety of goods moving on many interstate routes over the country between shipping and delivery points situate in the same state as may well cause us to hesitate. Take, for example, a single instance in this circuit; the great traffic, by freight and express, carried over the Baltimore & Ohio System between Philadelphia and Pittsburgh. Both termini are in the state of Pennsylvania, but the routing is through Delaware, Maryland, and West Virginia. In such interstate transit, shipments between these two Pennsylvania terminals, during their movement through these other states, remain in terminal yards, may be transhipped, are handled by many employés, and are, by reason of moving through such other states, in need of that protection which the federal government can alone afford to shipments passing outside the borders of a state. Although the shipment and delivery points of this particular traffic are both in Pennsylvania, yet, by reason of its necessarily interstate movement between those intrastate points, Pennsylvania is unable to protect such commerce, and for such interstate protection the interstate powers of the federal government are absolutely necessary.

Now, over Moynihan's crime, committed, as it was, wholly in New Jersey, New York could have no jurisdiction. And in the country at large there must be a great many like instances of necessarily like interstate routings between intrastate points, in the minds of Congress when this statute was passed. That Congress meant, in the broad terms it used, "goods or chattels moving as, or which are a part of, or which constitute an interstate * * * shipment of freight or express," to exclude from federal jurisdiction and federal interstate protection the vast volume of freight and express thus moving between terminal points in a single state, but by routings through other states, is simply unbelievable.

In reaching the conclusion we have, we deem it proper to say that we have not overlooked the several cases cited to us. Some of them bear on taxation and other subjects than the one single one we have here before us, viz. the protection of goods moving on interstate routes. We have therefore not discussed them, and limit ourselves to saying that, within the meaning of the statute, the views expressed by us find support in the simple, common-sense statement of Judge Holt in United States v. Delaware Co. (C. C.) 152 Fed. 271: "There is a possibility of some discrimination under any theory, but I think that the simplest theory is that as soon as merchandise is carried from one state to another it becomes interstate commerce." We accordingly hold that the statute applied to the facts in this case, so far as the interstate character of the shipment is concerned.

[2] On another phase of the case, however, we think that the proof has failed to establish, with the degree of certainty required in criminal cases, one of the jurisdictional prerequisites of the statute and necessary allegations of the indictment. It will be observed from the before-quoted provision of the statute that, so far as goods constituting an interstate or foreign shipment of freight or express are concerned, it is limited in its application to thefts from certain designated places. In obedience to this requirement, the indictment alleged that the bale of silk in question had been stolen from a platform or depot of the Twenty-Sixth street terminal of the American Express Company in New York City. That the proofs were insufficient to warrant the jury in finding that this allegation of the indictment had been substantiated was appropriately raised at the close of the testimony by motion for a direction of verdict of acquittal, and error assigned on the refusal of the trial court to grant the motion.

Whether the bale of silk had been stolen from the platform in New York, as alleged in the indictment, whether it had been stolen from a platform or depot in Jersey City, or from an express wagon, or whether it was still lawfully in the possession of some employé of the express company when it was pushed from the back of an express company wagon and taken possession of by Moynihan, the evidence does not disclose. The facts and circumstances are quite as susceptible, if, indeed, not more so, of the inference that the bale of silk was being stolen by Moynihan and a confederate on the express wagon as they were of the inference that it had been previously stolen from the platform in New York or some intermediate place. The jury were permitted, therefore, merely to guess as to whether one of the essential elements necessary to justify a conviction had been established, without substantial evidence upon which to base an affirmative answer. We are therefore of opinion that it was error to have declined to direct a verdict of acquittal upon the ground just discussed.

Upon another trial it should not be, we apprehend, difficult for the government to prove, by reference to the express company records, whether or not the bale of silk had lawfully left the platform of the express company in New York City, as alleged in the indictment. If it was not lawfully taken from that platform, that fact would be an

important item of evidence to establish the ultimate fact that it had been stolen from the platform in New York, as alleged in the indictment.

The judgment below is therefore reversed and a new trial granted.