### UNITED STATES v. YOHN.

(District Court, S. D. New York. May 27, 1921.)

Commerce ⬡⟜33—Larceny ⬡⟜1—Goods shipped between points in same state, but passing through another state, are moving in "interstate commerce."

Act Feb. 13, 1913, § 1 (Comp. St. § 8603), making it an offense against the United States to steal "goods or chattels moving as * * * an interstate or foreign shipment of freight or express," is complementary to the general regulation of railroads, and covers such commerce as the Interstate Commerce Act itself covers, which includes a shipment between points in the same state, but by a line passing through another state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

Criminal prosecution by the United States against William Yohn. On motion in arrest of judgment. Denied.

Garrett W. Cotter, of Flushing, N. Y., for the United States.
Edwin M. Stanton, of New York City, for defendant.

LEARNED HAND, District Judge. The defendant has been convicted of stealing goods from an interstate railroad car. The question at issue arises upon the face of the indictment and is therefore open

upon motion in arrest of judgment. It is this: The shipment was consigned from a point in the state of New York over the West Shore Railroad to the city of New York. This railroad for the larger part of its courses passes through the state of New York, but its eastern terminus is at Weehawken in the state of New Jersey, whose border it enters some 30 miles before it reaches Weehawken. At Weehawken the goods in question were to be transshipped by water across the Hudson river again into the state of New York, their final terminus. The question raised, therefore, is whether such a shipment is interstate within the act of February 13, 1913 (Comp. St. §§ 8603, 8604).

This question has been expressly ruled against the defendant by the Circuit Court of Appeals for the Third Circuit in United States v. Moynihan, 258 Fed. 529, 531, 532, 169 C. C. A. 469. It is true that the ruling was not necessary to a decision, but it was a distinct holding, and probably was intended for guidance upon the new trial. The same ruling was made by Judge Holt in United States v. Delaware (C. C.) 152 Fed. 269, 271, a case arising, not under the act of February 13, 1913, but under the Elkins Law (Act of February 19, 1903 [Comp. St. §§ 8597–8599]). In Hanley v. Kansas City & Southern Ry. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, goods were shipped from one station in Arkansas through Arkansas and Indian Territory to another station in Arkansas, and the Arkansas Railway Commission attempted to regulate the rates as between the two Arkansas stations. It was held that the commerce so regulated was interstate, and that the Commission had no jurisdiction, though nearly one-half the transit took place in Arkansas. The ground of the decision was that, whatever might be the rule in taxation, for purposes of regulation such commerce was to be deemed interstate.

Such commerce is, however, not exempt from taxation as distinct from regulation. It was expressly held in Lehigh Valley R. R. v. Pennsylvania, 145 U. S. 192, 12 Sup. Ct. 806, 36 L. Ed. 672, that a state might levy a tax upon that portion of a railroad's income which was derived from so much of the transit as was within the state, where both termini were in the same state, and on page 201 of the opinion (12 Sup. Ct. 806, 36 L. Ed. 672) there is language suggesting generally that the test of interstate commerce is the two termini. Yet this language is treated in Hanley v. Kansas City & Southern Ry. Co., supra, 187 U. S. 621, 23 Sup. Ct. 214, 47 L. Ed. 333, as carefully confined to tax purposes. In Cornell Steamboat Co. v. Sohmer, 235 U. S. 549, 35 Sup. Ct. 162, 59 L. Ed. 355, a similar tax statute was sustained, when limited to so much of the transportation as took place within the borders of the taxing state. In Ewing v. City of Leavenworth, 226 U. S. 464, 33 Sup. Ct. 157, 57 L. Ed. 303, a state license tax upon the business of soliciting traffic for an express company was sustained. All the traffic solicited was for a transit beginning and ending in the state of Kansas, but passing for a portion of its route through Missouri. The same distinction was taken (226 U. S. 469, 33 Sup. Ct. 157, 57 L. Ed. 303), as in Hanley v. Kansas City Southern Railway Co., supra, i. e. that for regulation the rule might be different from that for taxation. In U. S. v. Lehigh Valley R. R. Co. (D. C.)

115 Fed. 373, Judge Hazel in a case involving the regulation of rates held that a shipment such as that at bar, was not interstate commerce, relying on Lehigh Valley R. R. Co. v. Pennsylvania, but at that time, 1902, Hanley v. Kansas City Southern Ry. Co., supra, had not yet been decided, and with all deference I think the case should be treated as overruled.

In Wilmington Transportation Co. v. Cal. R. R. Commission, 236 U. S. 151, 35 Sup. Ct. 276, 59 L. Ed. 508, the court had before it the regulation of commerce by sea from a point on the mainland of California to the island of Santa Catalina, also a part of the state, the carriage being for 20 miles upon the high seas. It was argued that so much as was on the high seas was interstate commerce, and that the rates could not therefore be regulated by the state commission, but the court said that as the Interstate Commerce Act (24 Stat. 379) did not attempt to prescribe rates for water transportation, and as Congress had not therefore exercised its power, the state might still regulate the rates for the whole transit. Although the opinion did not decide, it strongly intimated that, in case Congress should choose to regulate such commerce, it would be within its powers to do so in spite of the fact that both termini were in the same state, and it was so ruled in Lord v. Steamship Co., 102 U. S. 541, 26 L. Ed. 224.

Whatever may be said of a state's powers of taxation, it seems to me that these decisions settle it that if Congress chooses to act upon commerce of the kind at bar, it has the power; its action affects interstate commerce as the Constitution means it. Such commerce may be of a kind which is not immune from state regulation before Congress acts, but it is nevertheless within the powers of Congress, should that body choose to assert them. The goods in fact cross from one state into another and then back again. For example, there can be no question that should the state into whose borders the goods come for the time being attempt to regulate their passage, Congress would have the power to deal with that regulation.

If so, the question turns upon the meaning of the act of February 13, 1913; does it include such commerce as this? The relevant language is this: "Goods or chattels moving as * * * an interstate or foreign shipment of freight or express." The phrase, "interstate shipment," does not alone throw much light, and the question must be answered by looking at the general purposes of the statute. It should, I think, be treated as complementary to the general regulation of railroads, and to cover such commerce as the Interstate Commerce Act itself covers. Hanley v. Kansas City Southern Railway Co., supra, hardly depends upon the existence of the Interstate Commerce Act, but there can be no doubt that that act covers such commerce as that at bar. It would be a factitious distinction to include the same commerce within the meaning of one statute and exclude it from another so closely akin. Rather, I should suppose, the protection of "interstate shipments" ought to be coextensive with the general assumption of control by the government over the railway systems as a whole. Doubtless, there is no inherent necessity that thefts from interstate commerce should be justiciable in a federal court, and, besides, I ought not

to forget that I am dealing with a criminal statute. Yet these considerations are not enough to impose a limitation upon the scope of this act which should introduce an arbitrary and meaningless exception in a public policy clearly expressed elsewhere. The point is, however, open to doubt, and the defendant should be admitted to bail, pending its review, which can be procured with very little trouble and expense.

Motion to arrest denied. Judgment will go on the verdict. I will entertain a motion to admit the defendant to bail pending a writ of error.