The UNITED STATES of America, Appellee,

v.

Max Benjamin BERGER, Sheldon Polakoff, Morris Satz, Appellants.

No. 318, Docket 28504.

United States Court of Appeals Second Circuit.

Argued March 6, 1964.

Decided Oct. 9, 1964.

Rehearing Denied Nov. 19, 1964.

**486**

John T. Curtin, U. S. Atty., Western Dist. of New York (Charles F. Crimi, Asst. U. S. Atty., of counsel), for appellee.

John A. Dillon, Lackawanna, N. Y., for appellant Berger.

John W. Condon, Jr., Condon, Klocke, Ange & O'Donnell, F. Lambert Haley, Buffalo, N. Y., for appellants Polakoff and Satz.

Before WATERMAN and KAUFMAN, Circuit Judges, and DIMOCK, District Judge.*

WATERMAN, Circuit Judge.

Defendants were convicted of stealing goods from a railroad car, which goods were part of an interstate shipment, in violation of 18 U.S.C. § 659, and of conspiring to commit this federal offense, in violation of 18 U.S.C. § 371. They were sentenced to five years imprisonment on each count, the sentences to run concurrently. All three defendants appeal from the judgments of conviction under 18 U.S.C. § 659, claiming that the goods they stole were not part of an interstate shipment. Defendant Satz also appeals from the judgment of conviction under 18 U.S.C. § 371, claiming that there was insufficient proof that he knowingly participated in the conspiracy. We affirm on the first branch of the appeal and do not reach the second.

The undisputed facts relating to the violation of 18 U.S.C. § 659 are as follows: On May 10, 1961 the New York Central Railroad left an empty gondola car beside the plant of the Anaconda American Brass Company in Buffalo, New York. Anaconda filled the car with brass slag and scrap brass for shipment to a refinery where the copper contained in the brass would be reclaimed. The Company prepared a bill of lading which specified delivery by the New York Central to the Long Island Railroad at a siding on Long Island, New York. These transactions occurred according to a continuing arrangement between Anaconda and the New York Central.

On May 11, 1961 the yard conductor of the New York Central picked up the loaded car, and, pursuant to a private agreement with at least two of the defendants, diverted the car from its normal route to the nearby premises of the Skillen Iron and Metal Company. There the defendants stole 66,640 pounds of

---

* Sitting by designation.

brass waste from the car. The car then continued its journey to a weighing station, where the contents of the car were found to weigh 116,060 pounds. The rated capacity of the car was 140,000 pounds.

Shortly before or after the weighing of the car, a waybill was made out by the New York Central freight agent indicating that the shipment would be routed through Weehawken, New Jersey. The car proceeded to its destination by the prescribed route. This was the only routing used by the New York Central for shipments from Buffalo to the Long Island Railroad on Long Island. The New York Central, however, had on file with the Interstate Commerce Commission two other tariffs providing for routes wholly within New York State between these two points.

The defendants contend that the goods they stole were not part of an interstate shipment at the time of the theft. They base their argument on three grounds. First, as the yard conductor who took the car from the shipper's premises intended throughout to divert it from its proper route for the purpose of plundering its contents, the car had not begun its interstate journey when the theft took place. Second, as the car would have been overweight and consequently would have been returned to the shipper if the thieves had not lightened its load, the car was not on an interstate journey when the theft occurred. Third, as the route through another state was not decided upon until after the theft, the car had not begun its interstate journey when the theft took place.

■ To our knowledge, this is the first case under 18 U.S.C. § 659 to present these issues. There are a number of other cases concerning the point at which,

within the meaning of the statute, an interstate shipment begins, but they do not even give guidance by analogy.[1] In addition, as one of the decisions in our court points out, cases from other areas of the law such as taxation are likewise an unreliable guide to the interpretation of this statute. United States v. Fox, 126 F.2d 237 (2 Cir. 1942); accord, United States v. Yohn, 275 F. 232, 233–34 (S.D.N.Y.1921) (L. Hand, J.), aff'd, 280 F. 511 (2 Cir. 1922); United States v. Moynihan, 258 F. 529, 532 (3 Cir. 1919).

■■ In approaching the defendants' contentions, we must remember that we are dealing with a criminal statute, and that criminal statutes are to be strictly construed, Yates v. United States, 354 U.S. 298, 310, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), but we must also be mindful that Congress has here undertaken to protect and promote the flow of goods in interstate commerce, and that this undertaking is not to be hampered by technical legal conceptions. Cf. North American Co. v. SEC, 327 U.S. 686, 705, 66 S.Ct. 785, 90 L.Ed. 945 (1946).

■ We do not agree that the interstate journey was delayed until after the theft took place because the intent of the yard conductor was to divert the car from its proper course until it could be plundered. That person was also an employee of the carrier to whom the shipper meant to deliver the car and was acting under the color of his office as a yard conductor in receiving the car. These facts are enough to mark the beginning of the interstate journey from the moment the car left the premises of the shipper.

There is some support for the conclusion we reach here in United States v. Fox, supra. In that case, also, the person who received the goods from the

1. United States v. Sherman, 171 F.2d 619 (2 Cir. 1948), cert. denied, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed.2d 1738 (1949); United States v. Fox, 126 F.2d 237 (2 Cir. 1942); United States v. Gollin, 166 F.2d 123 (3 Cir. 1948), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); Wolk v. United States, 94 F.2d 310 (8 Cir. 1938), cert. denied, 303 U.S. 658, 58 S.Ct. 763, 82 L.Ed. 1118 (1938); Sharp v. United States, 280 F. 86 (5 Cir. 1922), cert. denied, 260 U.S. 730, 43 S.Ct. 92, 67 L.Ed. 485 (1922); Lowery v. United States, 271 F. 946 (7 Cir. 1921).

shipper in behalf of the carrier later participated in the theft. The court did not even bother to discuss the possibility that this fact might have delayed the start of the interstate journey.

Likewise, we do not agree that the interstate journey began only after the theft took place for the reason that prior to the theft the car was overweight and would have been returned to the shipper. The criminal jurisdiction of the United States over a shipment interstate in its conception ought not to be destroyed simply because an unforeseen happenstance could stop the shipment before it crosses a state line.

Finally, we do not agree that the start of the interstate journey was delayed until after the theft because not until then did the carrier designate an interstate route for this particular shipment. It is enough that the shipper delivered goods to the carrier for carriage, not having specified an intrastate route, and that the carrier subsequently chose an interstate route in the reasonable exercise of its commercial judgment, pursuant to authority vested in it by the shipper to choose the route which would most conveniently get the goods to their destination. Whether even less would suffice to mark the beginning of the interstate journey from the time the car left the shipper's premises we do not now decide.

It is true, as the defendants point out, that United States v. Fox spoke of "an interstate journey, intended to be such from the outset," 126 F.2d 237, 238. But we feel that the intent prescribed by this rule need only be an intent that the goods travel to their ultimate destination. There need not be an intent from the outset that the goods travel by an interstate route. Of course this distinction is unnecessary in the ordinary case, such as Fox, in which the ultimate destination of the interstate shipment is in a different state.

We conclude that the judgments of conviction under 18 U.S.C. § 659 should be sustained. Defendants were sentenced to five years imprisonment under these judgments. Satz's judgment of conviction under 18 U.S.C. § 371 did not prolong this sentence. Therefore it is unnecessary for us to peruse the exceedingly lengthy trial record to determine whether there was sufficient proof that Satz knowingly participated in the conspiracy. Any error in this regard would, for better or worse, be classified as harmless. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Cardillo, 316 F.2d 606, 614 (2 Cir. 1963); United States v. Cordo, 186 F.2d 144, 147 (2 Cir. 1951), cert. denied, 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686 (1951).

Affirmed.

DIMOCK, District Judge (dissenting).

The goods were stolen before they had left the state in which they were delivered to the carrier. Since they had not crossed a state line at the time of the theft the only basis for a determination that the shipment was an interstate one would have to be someone's intention.

No one had any intention that the goods should travel interstate at the time of the theft. That intention arose when, after the theft, the carrier issued an interstate waybill and thus chose the interstate route. Up to that time the only intention was that of the shipper. This was expressed by the shipper when it prepared the bill of lading giving the destination, "Nichols Siding, Long Island," and the routing, "N.Y.C.-L.I. RR Delvy." If the Government had proved only the theft and the bill of lading the case would have had to have been dismissed. The shipment, just as if it had been one originally rolling between two points in the same state but thereafter diverted out of the state and back again because of an obstruction in the track, was intrastate for part of its journey and interstate for the remainder. Thus, in plain fact, the shipment here was intrastate until a waybill was issued and interstate thereafter.

My brethren indulge in the fiction that the post-theft decision by the carrier to route the shipment interstate made the shipment interstate *ab initio*. In the past, fictions have been useful in ameliorating injustices in the law. I am unwilling, however, to vote for the use of a novel fiction to send a man to prison for five years. I would reverse and dismiss the indictment.

### On Petitions for Rehearing.

John A. Dillon, Lackawanna, New York, for appellant Berger.

F. Lambert Haley, Buffalo, New York, for appellant Satz.

Condon, Klocke, Ange & O'Donnell, Buffalo, New York, for appellant Polakoff.

PER CURIAM:

Defendants' petitions for rehearing by the panel are denied.

█ In view of our colleague's dissent from this disposition we of the majority are required to state that we would not wish to leave doors open so that federal agents, by suggesting a course of post-crime conduct after the criminal's activity, could create a federal crime out of activity that would otherwise only be a state crime. The language of our opinion does not permit this; we specify that the interstate route be chosen by the carrier "in the reasonable exercise of its commercial judgment." And, moreover, here there is no possibility that the chosen route could have been tampered with by the Federal Bureau of Investigation, or by anyone else, for the uncontradicted testimony was that the carrier always routed its cars from Buffalo to Long Island by way of Weehawken, New Jersey.

DIMOCK, District Judge (dissenting):

Defendants have moved for a rehearing of their appeal from conviction of theft from interstate commerce and that the rehearing be held *en banc*.

The facts brought out in the application demonstrate so completely what I regard as the unsoundness of the affirmance that I am constrained to vote for reconsideration in the hope that in the course of it my brethren will be persuaded.

It appears that one of the defendants was arrested by the F. B. I. before the decision was made to route the shipment interstate. It thereupon rested with the carrier to decide whether or not he had committed a federal crime. His guilt depended upon whether the carrier would exercise in favor of an interstate rather than an intrastate route the choice offered by its tariffs.

My point is not that the arrest was unlawful. My point is that the facts of the case of one of the defendants afford a perfect illustration of the error in giving retroactive effect to a decision to route a shipment in interstate rather than intrastate commerce. The fact that the F. B. I. was in a position to influence this decision places further emphasis on this case as an illustration of the error.

Putting aside the case, not presented here, of a shipper who knows of the custom of his carrier to route interstate and who might thereby be considered to intend an interstate shipment, I am satisfied that a shipper who names an intrastate destination thereby stamps as intrastate so much of the journey as takes place before his carrier actually makes an election to route interstate. While it is thus my belief that so much of the journey is intrastate, that conclusion is unnecessary. It suffices that the most that can be said is that the character of the journey was undecided at the time of the theft. The Government's burden was not to show that its character was undecided but to show that it was interstate. Even though it be established that the carrier had a custom of choosing a published interstate tariff route instead of a published intrastate tariff route and even if there be a rule of law that a shipper who does not designate one of the published tariff routes vests in the

**490**

carrier authority to choose the published route most convenient for the carrier, the fact remains that at the time of the theft no mortal knew or intended that the shipment would be interstate. I think that we ought to leave the employment of the doctrine of predestination to the ecclesiastical courts.