**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Jerome ASTOLAS et al.,
Defendants-Appellants.**

**Nos. 232–234, Dockets 73–1679, 73–1730,
73–1731.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 4, 1973.

Decided Nov. 8, 1973.

Richard J. Arcara, Asst. U. S. Atty., W. D. N. Y., Buffalo, N. Y. (John T. Elfvin, U. S. Atty., W. D. N. Y., Buffalo, N. Y., on the brief), for plaintiff-appellee.

William B. Mahoney, Buffalo, N. Y., for defendants-appellants, James Jerome Astolas and William Dallas Bermel.

John P. McKenna, Buffalo, N. Y., for defendant-appellant, Daniel James Edin.

Before MEDINA, FEINBERG and TIMBERS, Circuit Judges.

MEDINA, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Western District of New York, Chief Judge John O. Henderson presiding, after a jury trial convicting each of the appellants of three counts of an indictment alleging that appellants stole certain trailers containing automotive supplies constituting interstate shipments, 18 U.S.C., Sections 659 and 2, and of one count alleging conspiracy, 18 U.S.C., Section 371. Appellant Astolas was sentenced to serve concurrent eight-year terms of imprisonment on each of the substantive counts and a five-year concurrent term on the conspiracy count. Bermel and Edin were given a concurrent five-year term of imprisonment on each of the four counts. Each appellant was fined $20,000.

We find it necessary to discuss only the legal questions arising out of appellants' contentions that as to two of the trailers interstate shipment had not commenced at the time appellants made off with the trailers and their contents, and that as to the other trailer interstate shipment had terminated.

I

The facts adduced at the trial by the Government to show the interstate character of the shipments were not controverted. Middle Atlantic Warehouse Distributors, Inc., the victim of the theft, is an automobile supplies wholesaler that owns a warehouse in Tonawanda, New York. In the course of its business, it purchases parts from manufacturers, generally located in the Midwest, warehouses them, and resells them to 70 customers, 65 of which are spread throughout 15 Northeastern states. Middle Atlantic employs its own drivers, and uses its own tractor-trailers to carry the parts from manufacturers to Tonawanda, and from Tonawanda to its customers.

On July 20, 1972, Middle Atlantic Trailer 7105 was loaded with supplies from the Middle Atlantic warehouse. A bill of lading was prepared by the warehouse manager describing the contents of the shipment, its weight, together with routing directions to stops in Massachusetts, Connecticut, and Rhode Island. The doors of the trailer were closed and sealed with serially numbered metalstrips inserted between the door and frame of the vehicle.

On Friday, July 21, 1972, Middle Atlantic similarly loaded trailer 7106 with supplies, sealed its doors, and prepared shipping documents.

The following day, Saturday, July 22, a day on which Middle Atlantic was not open for business, the manager returned to the warehouse, attached tractor trucks to trailers 7105 and 7106, and moved them from the loading dock to a Middle Atlantic parking lot adjacent to the warehouse. He then put the respective bills of lading on the consoles next to the drivers' seats of the tractors, checked the seals, and locked the tractors. Trailer 7105 was scheduled to depart on Sunday, July 23, and Trailer 7106 was scheduled to depart before the opening of business on Monday, July 24. The manager testified that nothing else had to be done to ready the vehicles for transit; they were merely awaiting their assigned drivers.

Trailer 7107 was driven on Friday, July 21, 1972, from the A & P Parts

Company in Toledo, Ohio, to Middle Atlantic's warehouse in Tonawanda, arriving at 8:15 in the evening, after regular business hours. The driver, a Middle Atlantic employee, backed his vehicle up to door 6 of the warehouse and left it there, tractor truck and trailer still connected. He deposited the bill of lading in a mail box, which had been placed for that purpose on a side door leading to the warehouse.

Trailers 7105, 7106 and 7107 and their attached tractors were stolen on Saturday night, July 22.

At the appellants' trial, Chief Judge Henderson gave the following instructions to the jury on the subject of whether the automobile supplies constituted interstate shipments:

> The interstate character of the property stolen is an essential element of this offense. The interstate character of a shipment commences at the time that the property is segregated for interstate commerce and comes into possession of those who are assisting its course in interstate transportation, and continues until the property arrives at its destination and is there delivered, either by actual unloading or by being placed to be unloaded.

> Thus, for example, as to Counts One and Two of the indictment [those relating to trailers 7105 and 7106], if you find beyond a reasonable doubt that Middle Atlantic Warehouse Distributors, Incorporated, had caused the goods in question to be placed in trailers at their loading dock; that the trailers had then been sealed; that tractors were then affixed to the trailers; that the tractor trailers were then moved to a point away from the loading dock and placed in the parking lot of Middle Atlantic Warehouse Distributors, Inc., and that bills of lading had been prepared and placed within the cabs of the tractors; then you may also find that the property in question constituted a shipment in interstate commerce.

> In addition, if you find beyond a reasonable doubt that the tractor trailer involved in Count Three of the indictment [relating to trailer 7107], arrived at the yard of Middle Atlantic Distributors, Inc., from another state; you will recall this involved a shipment from Toledo, Ohio, into New York State, that upon arrival in that yard the tractor trailer was placed in the loading dock in a sealed condition; and that the bill of lading was placed in the mail slot of the terminal, then, you may also find that the property in question remained in interstate commerce at the time of the alleged theft.

Appellants noted an exception to these instructions.

Appellants claim that trailers 7105 and 7106 had not yet become interstate shipments at the time they were stolen, and that trailer 7107 had ceased to be an interstate shipment by the time it was stolen. They claim that the trial court erred in its instructions to the jury by giving overbroad content to "interstate shipment," by giving disjunctive rather than conjunctive effect to the three phrases of the statute preceding the words "interstate shipment," and by restating the instructions in the terms of the testimony of Government witnesses. They make other claims for reversal on the subject of other exceptions to the charge and to various refusals to charge as requested.

We find no merit in any of these contentions.

## II

### Section 659

The indictments charged that appellants violated Section 659 of Title 18 of the U.S.Code:

> Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel,

or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property; * * *.

The phrase most important to this appeal, "moving as or which are a part of or which constitute an interstate or foreign shipment," was the phrase chosen by Congress in 1913 when it first enacted the predecessor of Section 659. The legislative history of the 1913 bill sheds no light on the meaning of the phrase. The bill was reported to the Senate by the Judiciary Committee with the recommendation that it be passed, but *without other comment.* S.Rep. 1132, 62d Cong., 3d Sess. The floor debates reflect only an attempt to amend the bill to transmute it into a venue provision, defining a federal crime only if venue did not lie in any state because of the interstate character of the theft. The *proposed amendment was rejected out of hand.*[1]

■ Although the legislative history of the statute sheds no light on its purpose, this Court has repeatedly held, given the all-inclusive sweep of its terminology, that Section 659 is designed by the Congress to promote the flow of goods in interstate commerce, United States v. Berger, 338 F.2d 485 (2d Cir. 1964), cert. denied, 380 U.S. 923, 85 S. Ct. 925, 13 L.Ed.2d 809 (1965); United States v. Thomas, 396 F.2d 310 (2d Cir. 1968), and that the carrying out of this purpose is not to be hampered by technical legal conceptions. 338 F.2d, *supra,* at 487.

■ The scope of the phrase "moving as or which are a part of or which constitute an interstate or foreign ship-

ment" is plainly to be inferred from the list of places from which theft is proscribed. These places include not only railroad cars and tractor-trailers and other modes of transportation, but any "station, station house, platform or depot * * *." It was intended that a theft from commerce could be committed before the goods were placed on board, and after they are taken off of a carrier; it is not required that a shipment be in motion.

■ The statute suggests three ways in which the commerce requirement can be met: the goods can be (1) moving as an interstate shipment, (2) part of an interstate shipment, or (3) constituting an interstate shipment. The use of the conjunction "or" between the clauses suggests that the criteria are disjunctive rather than conjunctive. See United States v. Gollin, 176 F.2d 889, 893 (3d Cir.), cert. denied, 338 U.S. 848, 70 S.Ct. 89, 94 L.Ed. 519 (1949).

■ Under all three clauses, the determination that a shipment is interstate is essentially a practical one based on common sense and administered on an ad hoc basis. It depends on such indicia of interstate commerce as the relationship of consignee, consignor, and carrier, if they are separate entities, United States v. Cousins, 427 F.2d 382 (9th Cir. 1970), the physical location of the shipment when stolen, United States v. Vilhotti, 452 F.2d 1186 (2d Cir. 1971), cert. denied, 406 U.S. 947 (1972), whether the goods have been delivered to a carrier at the time of theft, United States v. Fox, 126 F.2d 237 (2d Cir. 1942), where there is no carrier, what steps the owner has taken to carry out an interstate shipment, *cf.* Hughes Brothers Timber Co. v. Minnesota, 272 U.S. 469, 475–476, 47 S.Ct. 170, 71 L.Ed. 359 (1926), and the certainty with which interstate shipment is contemplat-

---

1. Subsequent to 1913, the statute was amended a number of times, modernizing its language and including new means of transportation within its scope. See 43 Stat. 793, Jan. 28, 1925; 47 Stat. 773, Jan. 21, 1933; 60 Stat. 656, July 24, 1946; 61 Stat. 52, April 16, 1947. The language "moving as or which are a part of or which constitute an interstate or foreign shipment" has never been altered.

ed, as evidenced by shipping documents. *Cf.* United States v. Berger, *supra*, 338 F.2d 485 (2d Cir. 1964), cert. denied, 380 U.S. 923, 85 S.Ct. 925, 13 L.Ed.2d 809 (1965).

### III

Having stated the controlling legal principles applicable to this type of case, we turn to a brief discussion of the details of appellants' contentions.

### A

■■ The statute reads in the disjunctive, "or," and the indictment alleges in the conjunctive, "and." It is argued that this requires for conviction a finding that the stolen goods not only "constituted" an interstate shipment, but also that the goods were "moving as" and "were a part of" an interstate shipment. Chief Judge Henderson properly refused to instruct the jury to this effect. The main thrust of the case is whether or not we have here an interstate shipment. Chief Judge Henderson acted wisely and properly in refusing to be drawn away, or to have the jury's attention diverted from this basic concept. An indictment may charge alternate ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evidence justifies a finding that the statute was violated in any of the ways alleged. United States v. Conti, 361 F.2d 153 (2d Cir. 1966), rev'd on other grounds, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968); Joyce v. United States, 147 U.S.App.D.C. 128, 454 F.2d 971 (1971), cert. denied, 405 U.S. 969 (1972); McGriff v. United States, 408 F.2d 333 (9th Cir. 1969); Rimerman v. United States, 374 F.2d 251 (8th Cir.), cert. denied, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); Smith v. United States, 234 F.2d 385 (5th Cir. 1956).

### B

■■ In this case there was no common or contract carrier. Middle Atlantic was the shipper and the tractor trucks and trailers were owned by Middle Atlantic and operated by its employees. Appellants make much of this and call our attention to a variety of quotations from decisions in cases with a bewildering variety of fact situations involving carriers or the taxing powers of the States. It is settled law, however, that carriage of the property by the owner does not put the property outside of the protection of Section 659. Winer v. United States, 228 F.2d 944, 947 (6th Cir.), cert. denied, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442 (1956); United States v. Gollin, *supra*, 176 F.2d 889 (3d Cir.), cert. denied, 338 U.S. 848, 70 S.Ct. 89, 94 L.Ed. 519 (1949); Marifian v. United States, 82 F.2d 628 (8th Cir.), cert. denied, 298 U.S. 686, 56 S.Ct. 956, 80 L.Ed. 1406 (1936). If the consignor of the goods, in cases where no carrier is involved, takes steps that would normally be taken if a carrier were involved, and this is done with the intent to ship goods in interstate commerce, there is basis for a finding that the goods constitute an interstate shipment. *Cf.* Hughes Brothers Timber Co. v. Minnesota, *supra*, 272 U.S. 469, 475–476, 47 S.Ct. 170, 71 L.Ed. 359 (1926).

■ We are told that this is a case of first impression. Perhaps this is so. But, once it becomes clear that the same rule applies whether or not a separate common or contract carrier is involved, we think the result here is controlled by Judge Mulligan's ruling for this Court in United States v. Vilhotti, *supra*, 452 F.2d 1186 (2d Cir. 1971), cert. denied, 406 U.S. 947 (1972). In that case two trailers were loaded and made ready to depart just as were trailers 7105 and 7106 in this case. The goods were stolen before the trailers were moved from the place where they were parked. These two trailers were in or near the premises of the Crown Drug Stores Distribution Center in Cranford, New Jersey, awaiting the arrival of the tractor trucks and the drivers who were

to take the trailers to retail stores in Long Island, New York. According to footnote 1, page 1187 of *Vilhotti*, the placing of these loaded and sealed trailers in the place from which they were to be driven across state lines "constituted an effective delivery of the goods to the carrier, sufficient to render the goods part of interstate commerce as required by the statute."

While the facts of *Vilhotti* are not fully set forth in Judge Mulligan's opinion, an examination of the briefs indicates that the shipper had contracted with Paul's Trucking Company to provide tractors and drivers to transport the trailers to Long Island. This trucking company is the "carrier" referred to in the *Vilhotti* footnote. We think this holding clearly applies to a case such as the one before us where the loading, sealing and routing of the trailers were all completed prior to the arrival of the shipper's own drivers to drive the trailers away to their interstate destinations. And we also conclude that the same identical principles apply in reverse to the trailer from Ohio. Chapman v. United States, 151 F.2d 740 (8th Cir. 1945); Murphy v. United States, 133 F.2d 622 (6th Cir. 1943); United States v. Cousins, *supra*, 427 F.2d 382 (9th Cir. 1970).

We cannot agree with appellants' contention that the cases cited in Judge Mulligan's footnote in *Vilhotti* are not in point. The facts in United States v. Gollin, 166 F.2d 123 (3d Cir.), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L. Ed. 1151 (1948), second appeal United States v. Gollin, *supra*, 176 F.2d 889 (3d Cir.), cert. denied, 338 U.S. 848, 70 S.Ct. 89, 94 L.Ed. 519 (1949), were strikingly similar to those in the case before us. In *Gollin* 600 cases of beer were stolen from a truck that had been loaded and sealed and driven to a point on a public street in Newark, N.J. in front of Ballantine's brewery garage and two blocks from the loading platform. It was left there to await its previously assigned driver who was to take it to North Tarrytown, N.Y. The loader left the completed bill of lading with the truck keys at the garage to be picked up by the driver. Before the arrival of the driver the 600 cases of beer were stolen. The whole tenor of the opinions on both the first and on the second appeal indicated no doubt on the part of any of the judges that the 600 cases of beer constituted an interstate shipment. The first conviction was reversed because the trial judge after a review of the uncontroverted facts, as above stated, told the jury that as a matter of law the 600 cases of beer constituted an interstate shipment. This amounted to the direction of a verdict to convict, which is not permissible in criminal cases. On the second appeal, after a second conviction, the area of contention involved instructions by the trial judge that permitted conviction only if the jury found not only that the goods constituted an interstate shipment but also that they were moving in interstate commerce. After an explicit and unambiguous statement that the goods constituted an interstate shipment and that "Had the truck remained on the loading platform we would reach a similar conclusion" (United States v. Gollin, *supra*, 176 F.2d 889, at 893, cert. denied, 338 U.S. 848, 70 S.Ct. 89, 94 L.Ed. 519 (1949) ), the Third Circuit affirmed the second conviction because the instructions were more favorable to the defendants than they were entitled to receive and hence not prejudicial.

We have already commented on United States v. Berger, *supra*, 338 F.2d 485 (2d Cir. 1964), cert. denied, 380 U.S. 923, 85 S.Ct. 925, 13 L.Ed.2d 809 (1965). United States v. Cousins, *supra*, 427 F.2d 382 (9th Cir. 1970) involves the same principle but refers to goods stolen from a railroad car placed on the siding of the consignee awaiting unloading.

Nor are we persuaded that our decision in United States v. Fox, *supra*, 126 F.2d 237 (2d Cir. 1942) gives any support to appellants' contentions. When

the Court held "we are satisfied that at least as soon as the goods have finally left the shipper's possession and have come into the possession of any of those who are to forward them upon an interstate journey * * * they become a part of interstate commerce", the qualification "at least" must be taken to indicate that there are cases where an interstate shipment may be constituted before the goods are delivered to a carrier. This is such a case.

If it be true that the situation before us in this case is a novel one and that the state of the authorities is such as to leave a loophole through which thieves may safely emerge unscathed and unaffected by any federal criminal statute to the frustration of the obvious purpose of the Congress in the enactment of Section 659 to facilitate rather than to impede the movement of goods in interstate commerce, it is high time that the loophole be closed.

## IV

■ The proofs give ample support to the verdict. The highjackers were caught red-handed as they drove the three tractor trucks and trailers away from the premises of Middle Atlantic. One of the appellants was promptly apprehended hiding in a nearby marsh.

With respect to trailers 7105 and 7106 the supplies were packaged and segregated and addressed to Middle Atlantic customers. These supplies were loaded into the trailers. Bills of lading showing out-of-state routings were completed. The trailers were sealed. Unless the statute is to be read as requiring more than proof that the goods constituted an interstate shipment this was enough.

With respect to trailer 7107, the goods were still sealed in the body of the trailer. They were segregated from all other Middle Atlantic property. They had been neither examined nor accepted. A finding that the goods still constituted an interstate shipment was proper.

Affirmed.