UNITED STATES of America, Plaintiff-Appellee,

v.

Dennis WILLS, Robert Hardaway, Donald Moore, and George Van Trece, Defendants-Appellants.

Nos. 78–2109, 78–2134, 78–2181 and 78–2223.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1979.

Decided March 5, 1979.

James R. Vogler, Winston & Strawn, Paul Bradley, Chicago, Ill., for defendants-appellants.

Robert W. Tarun, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before TONE and BAUER, Circuit Judges, and MORGAN, District Judge.*

TONE, Circuit Judge.

The four appellants in these consolidated appeals were found guilty of theft from interstate shipments in violation of 18 U.S.C. § 659. The only substantial question presented is whether the articles stolen were "goods or chattels moving as or which

* The Honorable Robert D. Morgan, Chief Judge of the United States District Court for the Southern District of Illinois, is sitting by designation.

are a part of or which constitute an interstate . . . shipment of freight, express, or other property" within the meaning of that statute. We hold that they were and affirm the convictions.

Count 1 of the indictment charged all four defendants with theft of 14 appliances from a loading platform at Spiegel, Inc. at Chicago, Illinois, on July 5, 1977. Count 2 charged defendant Wills with the theft of two appliances from the same platform on the same date. After a bench trial all defendants were found guilty.

There was substantial evidence that the goods in question were stolen by the defendants from the Spiegel's loading platform as charged in the indictment. Except for a contention by Wills that he did not participate in the theft charged in Count 1, the defendants' contentions relate to questions other than whether they stole the goods.

We discussed the interstate commerce requirements of 18 U.S.C. § 659 at some length in *United States v. Parent,* 484 F.2d 726, 729–731 (7th Cir. 1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 79 (1974), and we need not repeat what was said there. In that opinion we quoted with approval the following passage from *United States v. Cousins,* 427 F.2d 382, 385 (9th Cir. 1970):

The determination of whether a shipment is in interstate commerce at a given time is essentially a practical one, depending upon the relationship between the consignee, consignor, and carrier, the indicia of interstate commerce at the time of the theft occurs, and the preservation of the congressional intent.

We then added that, "No single factor . . . is conclusive in the determination." 484 F.2d at 729.

■ It is unnecessary that the goods in question leave the shipper's facility or be actually moving in interstate commerce at the time of the theft. *United States v. Williams,* 545 F.2d 1036, 1039 (6th Cir. 1976); *United States v. Astolas,* 487 F.2d 275, 279 (2d Cir. 1973), *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974);

*see United States v. Gollin,* 176 F.2d 889, 893–894 (3d Cir.), *cert. denied sub nom. Richman v. United States,* 338 U.S. 848, 70 S.Ct. 89, 94 L.Ed. 519 (1949). In *Williams,* the goods were stolen from the shipper's "loading and shipping facilities." *United States v. Williams, supra,* 545 F.2d at 1039. As explained in *Astolas,* the language of the statute itself suggests that § 659 reaches such thefts:

The scope of the phrase "moving as or which are a part of or which constitute an interstate or foreign shipment" is plainly to be inferred from the list of places from which theft is proscribed. These places include not only railroad cars and tractor-trailers and other modes of transportation, but any "station, station house, platform or depot * * *." It was intended that a theft from commerce could be committed before the goods were placed on board, and after they are taken off a carrier; it is not required that a shipment be in motion.

487 F.2d at 279; *see also United States v. Parent, supra,* 484 F.2d at 729–731.

■ The evidence upon which the interstate commerce issue turns was as follows. Spiegel, a catalog merchant with annual sales of approximately $360,000,000, received and filled three kinds of customer orders: direct mail orders, telephone orders, and catalog store orders. After receiving an order, Spiegel personnel transmitted to a computer the ordered item's catalog number, description, and price, the customer's name, and the destination to which the item was to be shipped. The computer then scheduled the filling and shipment of the order and generated a sales slip and shipping label showing the consignee and his address, the carrier, the date of shipment, and various other data.

The sales slip and shipping label were then delivered by messenger to the area of the warehouse where the ordered item was stored, which, for the goods involved in the instant case, was the upper floors of Spiegel's West Pershing Road facility. At that point an order picker examined the sales slip and shipping label, picked the packaged

item from storage, and delivered it to a checker station. Using a computer terminal connected to the central computer, the checker made sure the item picked was the one ordered, weighed it on an electronic scale connected to the computer terminal, and inserted the shipping label into the computer terminal's printer.

The computer calculated a transportation charge and caused it to be printed on the label, which was then affixed to the package containing the ordered item. At the same time the computer billed the customer and credited the account of the common carrier that was to transport the ordered item to the consignee.

Within minutes, the labeled parcel was placed on a conveyor belt, which transported it immediately to the first floor sorting and loading area. There one of the sorters ascertained from the label the designated common carrier and placed the parcel on a flat truck with other parcels that carrier was to transport. Dock hands then wheeled the loaded flat truck onto trailers waiting in the bays of the dock area. Defendants Hardaway, Wills, and Sheldon were Spiegel dock hands assigned to this duty.

Once an item was labeled and placed on the conveyor belt, there was no practical way for Spiegel to interrupt its journey to the destination the computer had printed on the label. Some 10,000 labeled parcels passed through Spiegel's first floor loading area daily. After labelling, the goods were moved from the storage floor to the carrier's truck at the dock in less than four hours. A representative of Spiegel testified that trying to find an ordered item on the first floor loading area of Spiegel's facility "would be like looking for a needle in a haystack."

All of the parcels referred to in the indictment in the case at bar were labeled for out-of-state destinations. Twelve of the parcels charged in Count 1 were to be transported by United Parcel Service. For this carrier, computer manifests were used instead of traditional bills of lading. The Spiegel computer prepared the manifests during the night following the scheduled departure of the ordered items. The twelve stolen United Parcel Service parcels matched twelve computer manifests introduced in evidence. In addition to the twelve United Parcel items, there were three items covered by straight bills of lading, which were introduced at the trial. Spiegel was unable to locate a bill of lading for the remaining item, but other documentation showed that the item was labeled for shipment to an out-of-state consignee.

Under the circumstances we have described, a parcel's interstate journey commenced when it was moved by conveyor belt to the dock area, for it was then that Spiegel's power to prevent it from making its scheduled interstate journey ended. After that, even if the customer cancelled or changed the order, Spiegel could not retrieve the parcel from among the thousands of parcels that were assembled in the loading area. The irrevocability of this commitment to interstate movement was not altered by the chance that if the parcel was damaged en route to the carrier's vehicle and the damage was discovered it would be removed from shipment. Any goods in the stream of interstate commerce are subject to the chance that they will be held up or diverted through accident before they cross a state line. The statute nevertheless applies from the time the goods enter the stream. It is not always necessary for purposes of § 659, as the decisions discussed above illustrate, that the commitment to interstate commerce be irrevocable, but, when that is the case, the statute is clearly applicable. Accordingly, we conclude that the stolen goods in this case were within the statute.

Wills, and arguably other defendants, contend that the evidence failed to show theft of the parcels from the first floor loading area rather than one of the warehouse floors, and that parcels in the latter area were clearly not an interstate shipment. Although there was no direct evidence that the defendants took the parcels from the loading area, the circumstantial evidence to that effect was sufficient. The loading area was the place where the defendants were assigned to work and where

they therefore had ready access to labeled parcels, the contents of which could readily be identified from the label or the container itself. The parcels in question were labeled with computer generated labels. It was the practice to place a parcel on the conveyor for movement to the first floor loading area as soon as it had been labeled at the computer terminal. The inference is strong that the parcels in question were taken from the loading area by the defendants.

Defendant Wills contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. With respect to Count 1, this argument amounts to a challenge to the credibility of the Federal Bureau of Investigation Agent who testified about his observation, while working undercover, of Wills' participation in the thefts. It is enough to say that questions of credibility are for the trier of fact. With respect to Count 2, Wills challenges the interstate nature of the shipment because of alleged deficiencies in the documentation and failure to prove the value of one of the items, a GE portable color television set. The documentation in evidence was sufficient to show that both items were bound for out-of-state destinations. Concerning the value of the television set, there was evidence that Wills himself told the undercover agent it was worth $200. This, together with the item itself, which was admitted in evidence, constituted sufficient evidence to support the finding of a value in excess of $100. In any event, it was enough to sustain Count 2 that the other item's value concededly was in excess of $100.

Defendant Moore argues that there was a fatal variance between the charge in the indictment and the government's evidence. The indictment charged that the stolen goods were "moving as, were part of, *and* did constitute an interstate shipment." (Emphasis supplied.) Moore contends that because the conjunctive was used, the government was required to prove all three charges. It was clearly sufficient if one of the three was proved. *United States v. Astolas, supra,* 487 F.2d at 280; *United*

*States v. Barker,* 514 F.2d 1077, 1081 (7th Cir. 1975).

The judgments of conviction are affirmed.

Affirmed.