17-1589-cr
*United States of America v. Oreckinto*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand nineteen.

PRESENT:
>  ROSEMARY S. POOLER,
>  RAYMOND J. LOHIER, JR.,
>  RICHARD J. SULLIVAN,*
>  *Circuit Judges.*

---

United States of America,
>  *Appellee*,

>  v.                                                                    17-1589-cr

Andrew Oreckinto,
>  *Defendant-Appellant*.

---

| | |
|---|---|
| **FOR APPELLEE:** | MICHAEL J. GUSTAFSON, Asst. U.S. Atty., New Haven, CT (Marc H. Silverman, Asst. U.S. Atty., New Haven, CT, *on the brief*), *for* John H. Durham, U.S. Atty. for the District of Connecticut. |
| **FOR DEFENDANT-APPELLANT:** | TRACY HAYES, Asst. Federal Defender, *for* Terence S. Ward, Federal Defender for the District of Connecticut, New Haven, CT. |

---

\* Judge Richard J. Sullivan was a District Judge of the United States District Court for the Southern District of New York, sitting by designation, at the time this case was heard.

Appeal from a judgment of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Andrew Oreckinto appeals from the May 15, 2017 judgment of the United States District Court for the District of Connecticut convicting him, following a jury trial, of theft from an interstate shipment of cigarettes in violation of 18 U.S.C. § 659.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues presented for review.

Defendant raises two claims on appeal:   (1) that the government did not present sufficient evidence to prove that he stole an "interstate shipment" under Section 659, and (2) that the government made improper statements and displayed inflammatory and prejudicial images to the jury during summation.   We address each claim in turn.

### I.      Sufficiency of the Evidence

We evaluate challenges to the sufficiency of the evidence de novo.   *See United States v. Soler*, 759 F.3d 226, 229 (2d Cir. 2014).   "In so doing, we view the evidence presented in the light most favorable to the government, and we draw all reasonable inferences in its favor."   *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (quoting *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)).   Accordingly, we do not disturb a jury's verdict unless "the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."   *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004)).

Drawing all reasonable inferences in the government's favor, we conclude that the government presented sufficient evidence at trial to prove the following facts.

On March 19, 2011, Defendant broke into the New Britain Candy Company ("NBCC") warehouse located in Wethersfield, Connecticut, and stole approximately 8,000 cartons of cigarettes worth nearly $300,000. NBCC is wholly owned and operated by General Equities Inc., which also operates a chain of convenience stores along the East Coast called Food Bag. NBCC is the "Food Bag fulfillment center" – that is, it "supplies all the products that you see in Food Bag[]" stores, including cigarettes, candy, and other grocery items. Gov't App'x at 106–08. As of February 2017, there were 51 Food Bag locations: 35 in Connecticut, five in New York, five in Massachusetts, three in Florida, two in New Jersey, and one in Pennsylvania. NBCC supplies products to the Connecticut, New York, Massachusetts, and New Jersey Food Bag stores, but not the Florida or Pennsylvania Food Bag stores.

NBCC does not manufacture any of its own cigarettes but rather purchases them from two "major vendors" – Philip Morris and R.J. Reynolds – located in "the Virginia/North Carolina area." *Id.* at 109. When a shipment of cigarettes is delivered to NBCC, NBCC opens the shipment, cuts the 60-carton cases in half, and moves them to the mezzanine of the warehouse, where they are placed "in what's called a slot, which is basically a roll rack that a picker can pick the cigarette from for a specific order." *Id.* at 111. The cartons then remain in storage until they are ready for shipment to one of the Food Bag stores. No cigarettes are sold directly to consumers at the NBCC warehouse.

When a Food Bag store places a specific order, the order is transferred to NBCC's mainframe computer, which generates a "pick list" – a list that NBCC workers use to "actually pick

3

the product that's being shipped." *Id.* at 169. After the cigarettes are picked out, NBCC applies tax stamps to each carton, sends them out to NBCC's delivery trucks, and creates an invoice for each order. Individual Food Bag stores are ultimately billed for each shipment. NBCC turns over its entire stock of cigarettes approximately once every week and a half.

Defendant argues that the evidence compelled a finding that the interstate shipment of cigarettes from the Virginia and North Carolina manufacturers to the NBCC warehouse in Connecticut terminated when NBCC took custody of the cigarettes. We disagree.

In reviewing Defendant's evidentiary challenge, we begin by considering the relevant statutory text. *See, e.g.*, *United States v. Carter*, 801 F.2d 78, 81–82 (2d Cir. 1986). Contrary to Defendant's argument, the text and purpose of Section 659 strongly suggest that a shipment retains its interstate character even after it is moved from a truck to a temporary storage facility. First, Congress specifically included "warehouse[s]" and "storage facilit[ies]" in Section 659's list of entities from which "goods or chattels . . . which constitute an interstate or foreign shipment of freight, express, or other property" could be stolen. 18 U.S.C. § 659. Furthermore, we have repeatedly recognized that Congress enacted Section 659 "to protect and promote the flow of goods in interstate commerce," *United States v. Berger*, 338 F.2d 485, 487 (2d Cir. 1964), "and that the carrying out of this purpose is not to be hampered by technical legal conceptions," *United States v. Astolas*, 487 F.2d 275, 279 (2d Cir. 1973); *see also United States v. Bryser*, 954 F.2d 79, 86 (2d Cir. 1992) ("We have long disagreed with crabbed interpretations of this statute."). Thus, "the determination that a shipment is interstate is essentially a practical one based on common sense and administered on an ad hoc basis." *Astolas*, 487 F.2d at 279.

4

Undertaking this practical determination here in light of Section 659's text and purpose – and drawing all reasonable inferences in the government's favor – we conclude that there was sufficient evidence for a jury to find that Defendant stole the cigarettes while they were temporarily stored at the NBCC warehouse, and that the stolen cigarettes remained on an interstate journey from the North Carolina and Virginia cigarette manufacturers to the individual Food Bag stores located in Connecticut, New York, Massachusetts, and New Jersey.  The evidence presented at trial, and outlined above, amply supports this finding.[2]  In arguing otherwise, Defendant relies upon the clause in Section 659 that provides that "the waybill or other shipping document of such shipment shall be prima facie evidence of the place from which and to which such shipment was made."  18 U.S.C. § 659.  However, while the shipping documents at issue here could certainly have been used as prima facie evidence that the NBCC warehouse was the cigarette shipment's final destination, such prima facie evidence can still be contradicted.  *See*, *e.g.*, *Prima Facie Evidence*, *Black's Law Dictionary* (10th ed. 2014) (defining "prima facie evidence" as "[e]vidence that will establish a fact . . . unless contradictory evidence is produced").  Here, the government contradicted the prima facie evidence by presenting evidence of NBCC's role as a temporary storage point between the manufacturers and the individual Food Bag convenience stores.  In sum, a reasonable jury could have found that – bills of lading notwithstanding – the interstate shipment of cigarettes had not yet terminated upon its arrival at the NBCC warehouse.

---

[2] The district court held that "the interstate shipment requirement of § 659 may be satisfied on the basis of evidence concerning the routine and normal practices of a business to ship all or a significant portion of its inventory to out-of-state locations."  Appellant Add. at 10.  Because we conclude that the cigarettes at issue were part of a broader interstate shipment originating at the cigarette manufacturers in North Carolina and Virginia, pausing at the NBCC warehouse in Connecticut, and concluding at the individual retail stores where they were to be sold, we need not decide whether the district court erred in its broader statutory holding.

Our conclusion is not altered by the fact that it was NBCC – not the individual Food Bag stores – that placed the purchase orders for the cigarettes from the North Carolina and Virginia manufacturers. Even though NBCC technically "owned" the cigarettes at the time of the burglary, the evidence demonstrated that such ownership was transitory. To repeat, NBCC took ownership of the cigarettes solely for the purpose of storing them before transporting them to the Food Bag locations in Connecticut, New York, Massachusetts, and New Jersey. As our sister circuits have explained, a middleman buyer's intent to reship goods can render those goods an "interstate shipment" while in the middleman's possession and until they reach their final destination. *See*, *e.g.*, *United States v. Skoczen*, 405 F.3d 537, 544–45 (7th Cir. 2005) (holding that shipments remained interstate while being stored by the United States Customs Service even though the Customs Service was a cosigner on the bill of lading); *United States v. Williams*, 559 F.2d 1243, 1248 (4th Cir. 1977) (holding that a gasoline shipment remained interstate while it was in a "storage facility for a short period of time prior to its delivery to local distributors"); *cf. United States v. Garber*, 626 F.2d 1144, 1152 (3d Cir. 1980) (holding that shipments from Chile to Connecticut had not reached their "final destination," and thus were still "foreign" for purposes of Section 659, while paused in Philadelphia, in light of the shipper's "active pursuit" of alternative purchasers).

Accordingly, on the record here, there was sufficient evidence to support the jury's finding that Defendant stole an interstate shipment of cigarettes in violation of 18 U.S.C. § 659.

## II.    Prosecutorial Misconduct

Defendant also challenges his conviction on the grounds that the government made improper statements and displayed inflammatory images to the jury during its summation. Specifically, Defendant argues (1) that the prosecutor misstated the law in summation when

6

asserting that the theft "affected interstate commerce" and that "the interstate piece of the case" could be satisfied if the theft interfered with future shipments, Appellant Br. at 39 (quoting Gov't App'x at 755, 808); (2) that, also during summation, the prosecutor improperly showed the jury an image of the Defendant framed as their target, as well as an image of the Defendant with the caption "Guilty," Appellant Br. at 41; Doc. No. 21-1 at 5–6; and (3) that such errors substantially prejudiced him. We review these claims de novo, *see United States v. Daugerdas*, 837 F.3d 212, 227 (2d Cir. 2016), and find no prejudicial error.

A defendant who "seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a 'heavy burden.'" *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (quoting *United States v. Feliciano,* 223 F.3d 102, 123 (2d Cir. 2000)).

> The defendant must show not simply that a particular summation comment was improper, but that the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him . . . such that the resulting conviction was a denial of due process.

*United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) (internal quotation marks, alterations, and citations omitted). Further, because Defendant did not object to the prosecutor's statements during summation, we may not grant a new trial based on such statements "absent flagrant abuse." *United States v. Sheehan*, 838 F.3d 109, 128 (2d Cir. 2016) (quoting *United States v. Zichettello*, 208 F.3d 72, 103 (2d Cir. 2000)).

The prosecutor's statements during summation fell well short of flagrant abuse. Even if the prosecutor misstated the law on one occasion by referencing "interstate commerce" as a proxy for the "interstate shipment" element, the prosecutor also repeatedly and properly instructed the jury that it had to find the existence of an interstate shipment. Further, the prosecutor presented a

proper interstate shipment theory to the jury, namely, that the cigarettes were still on an interstate journey from the manufacturers to the individual Food Bag stores when they were stolen from the warehouse.   Thus, even if the prosecutor also referenced an erroneous interstate shipment theory, when "viewed against the entire argument to the jury, and in the context of the entire trial," *Williams*, 690 F.3d at 75 (internal quotation marks omitted), the prosecutor's conduct did not result in substantial prejudice or amount to a flagrant abuse.

With respect to the slides that the prosecutor showed to the jury during summation, we find no error, let alone prejudicial error.   The slides at issue were not unduly provocative, nor did they suggest that the jury should find Defendant guilty simply because the prosecutor said so. Moreover, the district court specifically and correctly instructed the jury that it was "appropriate for any party . . . to use this kind of demonstrative exhibit in connection with their closing arguments," and that the slideshow was "not evidence itself."   Gov't App'x at 749; *see United States v. Roldan-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990) ("In summation counsel are free to make arguments which may be reasonably inferred from the evidence presented."); *see also, e.g.*, *United States v. Ruiz*, 710 F.3d 1077, 1082–84 (9th Cir. 2013) (holding that the prosecutor's use of a PowerPoint presentation during summation to argue that the defendant was guilty did not result in substantial prejudice).   Thus, even if the prosecutor's use of the slides was improper, any error did not substantially prejudice Defendant.

We find that Defendant's remaining arguments are without merit.   Accordingly, we AFFIRM the judgment of conviction entered by the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8