UNITED STATES of America,
Appellee,

v.

Rudolph VILHOTTI et al., Defendants-
Appellants.

Nos. 202, 291, 307, 358,
Dockets 71–1766, 71–1779, 71–1827, 71–2013.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1971.

Decided Dec. 10, 1971.

See also, D.C., 323 F.Supp. 425.

John W. Nields, Jr., Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., William B. Gray, Asst. U. S. Atty., New York City, of counsel), for appellee.

Thomas Day Edwards, New York City, for appellant Vilhotti.

Jerome Lewis, New York City (Thomas R. Newman, Benjamin H. Siff, New York City, of counsel), for appellant Santa.

Gustave H. Newman, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, William Sonenshine, Brooklyn, N. Y., of counsel), for appellant Mercurio.

Irving Anolik, New York City, for appellant Maloney.

Before MOORE, HAYS and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Appellants Rudolph Vilhotti, Vincent Santa, Albert Mercurio and John Maloney appeal from judgments of conviction under count one of an indictment charging violations of 18 U.S.C. § 659 and § 2 (buying, receiving or having in their possession chattels stolen from an interstate shipment), and under count two, violations of 18 U.S.C. § 371 (conspiring to buy, receive or possess such chattels). Judgments of conviction were entered on July 12, 1971 after a five day joint jury trial before Hon. Harold R. Tyler, Jr., United States District Judge in the Southern District of New York. Sentence was imposed as follows: Vilhotti —five years on each count to run concurrently; Santa—four years on each count to run concurrently; Mercurio— three years on each count to run concurrently; Maloney—seven years on count one and five years on count two to run concurrently. We reverse the convictions of Santa and Mercurio on both counts. We affirm the conviction of Vilhotti and Maloney on count one and reverse and dismiss on count two.

On Friday, March 21, 1969 two trailers loaded with cigarettes and health and beauty aids were stolen from the Crown Drug Stores Distribution Center in Cranford, New Jersey. The trailers were completely loaded awaiting tractors scheduled to carry the goods to retail stores in Long Island, New York.[1] Five days later, on March 26, 1969 a federal agent and New York City detectives, acting on a tip from an informant, commenced a surveillance of a garage on East 172d Street in the Bronx which had been rented by one DiMenna, ostensibly as a warehouse for a construction business. At about 10:00 p. m., after a six hour surveillance, the agents found that the front door was locked but by peering through a window were able to see numerous cardboard cartons marked "Return to SGC Corporation" (the parent corporation of Crown Drug Stores). At 5:30 a. m. the next morning, DiMenna drove up in a car, removed some of the cartons and drove off. At about 9:20 a. m. another car drove up, and Vilhotti, Mercurio and Santa entered the garage. The agents found that the door was still locked but gained entry when Vilhotti opened the door from the inside. He was immediately arrested, and Mercurio and Santa were arrested inside the garage. In the back of the garage was a large number of cartons which were part of the shipment stolen from Crown Drug Stores. In addition, the agents found labels which had been removed

---

1. This constituted an effective delivery of the goods to the carrier, sufficient to render the goods part of interstate commerce as required by the statute. United States v. Gollin, 166 F.2d 123 (3d Cir. 1947), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); see United States v. Berger, 338 F.2d 485 (2d Cir. 1964), cert. denied, 380 U.S. 923, 85 S.Ct. 925, 13 L.Ed.2d 809 (1965); United States v. Cousins, 427 F.2d 382, 385 (9th Cir. 1970).

from cartons stolen from a Connecticut terminal in December, 1968.

About an hour later, while the three men were being held in custody in the garage, appellant Maloney knocked at the garage door. Maloney was promptly arrested, searched and found in possession of list of items in his own handwriting, which were carbon copies of list found in the garage under a carton. The list detailed items which had been in the hijacked trailers but which had been removed from the garage. Maloney's lists also had prices next to the items representing their cost. These items were totalled and divided in half. The sum of $650 was added, making a total of $3120.09. The sum of $3100 in cash was found in Maloney's possession.

The government's theory was that DiMenna, who was also indicted but died before trial, was using the Bronx garage as a storage place for goods from the hijacked trucks. There was testimony that trucks were driven into the garage almost daily, remained for periods of a quarter of an hour to an hour and were then driven away. There was no evidence to support the contention that DiMenna was actually operating a construction business, except that there were a few shovels and bags of cement on the premises.

■ We find ample evidence to support Maloney's conviction as a principal under count one of the indictment. He had in his possession lists of items which had been hijacked and which the jury could have properly found were taken to the Bronx garage and removed prior to the March 27th arrests. His presence at the garage that morning with a large amount of money under the circumstances described, was obviously for the purpose of paying off on the basis of half the value of the stolen goods. The presence of duplicate lists in the garage in his handwriting further supports the government's case that Maloney had bought, received or possessed goods which had been stolen in interstate commerce.

The government's case against Santa and Mercurio is based solely upon their presence in the garage on the morning of their arrest. Santa testified that Vilhotti, whom he had previously known, suggested to him that DiMenna had a construction job and would need extra Saturday help. He met Vilhotti by arrangement at a Bronx restaurant that morning and there met Mercurio for the first time; he also stated that he was looking for extra work from DiMenna. After arriving at the garage the three were arrested within a matter of minutes and all were at least a hundred feet away from the rear of the garage where the stolen cartons were lodged. There is nothing in the record to establish that either Santa or Mercurio was ever in or near the garage before that day. There is no evidence at all that they exercised any dominion or control over any of the contents of the garage or that they, in fact, even knew that the garage contained stolen property. In essence, the government's contention is that their presence alone is sufficient to establish knowing possession.

■ We hold that the mere presence of Santa and Mercurio in the garage is insufficient as a matter of law to establish either actual or constructive possession. It is well settled that in order to justify a conviction for receiving or possessing stolen goods under Section 659, the government must establish that the defendants exercised "dominion or control" over the goods. United States v. Casalinuovo, 350 F.2d 207, 209 (2d Cir. 1965). In United States v. Kearse, 444 F.2d 62 (2d Cir. 1971) this court recently held that a defendant's mere presence six feet away from forty cartons of stolen merchandise, which practically filled a small living room, was an insufficient basis to warrant a conviction for possession under the statute. The government cites no contrary authority. In addition to the numerous cases cited by Judge Moore in United States v. Casalinuovo, *supra*, 350 F.2d at 209–210, we further refer to our recent opinion in United States v. Steward, 451 F.2d 1203 (2d

Cir., decided Nov. 29, 1971) holding that a defendant's mere presence as the driver of an automobile, which carried a passenger who had possession of drugs, was insufficient to attribute possession to him. Here there is a total absence of any evidence to establish a *nexus* between Santa and Mercurio and the theft or the garage "drop." Their momentary presence prior to arrest is legally insufficient to establish any degree of knowledge in the absence of which there can be no dominion or control. See United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L. Ed.2d 210 (1965). The absence of any evidence, apart from their mere presence, to support the government's contention that Santa and Mercurio knew that the stolen goods were in the garage, similarly requires a reversal of their conviction on the conspiracy count. The evidence establishes only that they were acquainted with Vilhotti and possibly Maloney, but this is clearly insufficient to sustain a conspiracy conviction. United States v. Euphemia, 261 F.2d 441 (2d Cir. 1958).

The case against Vilhotti however is buttressed by other evidence which properly warranted the jury verdict of guilty on the substantive count. Vilhotti was seen two or three times a week in the immediate vicinity of the garage; he was seen going into the garage; he was seen with DiMenna. The jury could have properly found that the garage was locked when Vilhotti entered on the morning of the arrest and that he must have had a key. In view of the purposes for which the garage was obviously utilized, the jury could also have found, beyond any reasonable doubt, that Vilhotti was engaged in the crime of knowingly receiving goods which were stolen in interstate commerce. He was clearly not casually or fortuitously present.

Our reversal on the conspiracy counts of Vilhotti and Maloney is based not upon an insufficiency of the evidence but upon the refusal of the trial court, as requested by counsel, to charge the jury that in order to convict for conspiracy, they would have to find that the defendants not only knowingly bought, received or possessed goods which were stolen but that the defendants knew that they were stolen from interstate commerce. The government concedes that the cases in this Circuit have uniformly held that a conspiracy to violate Section 659 and similar statutes requires the specific intention to buy, receive or possess goods which defendants know were stolen from interstate commerce. The cases in this Circuit which have so held are manifold: United States v. Crimmins, 123 F.2d 271 (2d Cir. 1941) (conspiracy to transport stolen securities in interstate commerce); United States v. Bollenbach, 147 F.2d 199, 201–202 (2d Cir. 1944), rev'd on other grounds, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (conspiracy to transport stolen securities in interstate commerce); United States v. Sherman, 171 F.2d 619, 624 (2d Cir. 1948), cert. denied, Whelan v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949) (conspiracy to steal and receive goods in interstate commerce); United States v. Tannuzzo, 174 F.2d 177, 180 (2d Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493 (1949) (conspiracy to cause stolen goods to be transported in interstate commerce); United States v. Smolin, 182 F.2d 782, 786 (2d Cir. 1950) (conspiracy to possess goods knowingly stolen while in interstate commerce); United States v. Giuliano, 348 F.2d 217, 221 (2d Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 406, 15 L.Ed.2d 354 (1965) (conspiracy to transport stolen securities in interstate commerce).

We are told on appeal by the government that these cases were wrongly decided and should be overruled. While we can understand the interest in the government in facilitating the conviction of conspirators, we are not at all persuaded that the time has come to overrule a long line of cases which are admittedly controlling. The government urges that while this intent may be necessary in order to find a conspiracy to

**1190**

transport stolen goods across state lines (*Crimmins, supra*), no such intent should be necessary in a conspiracy to receive stolen goods, and that *Sherman, supra*, is an unwarranted extension of the *Crimmins* rule. However, both opinions were written by Judge Learned Hand and in *Sherman* he explicitly based his decision on the *Crimmins* rule (United States v. Sherman, *supra*, 171 F.2d at 623–624).

The fact that this specific intent is not required for a conviction of the substantive crime as it is for the conspiracy, is not at all unique in criminal law and is supported by reason. In United States v. Crimmins, *supra*, 123 F.2d at 273, Judge Learned Hand pointed out: "While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one supposes that there is a light to run past." [2]

The only case the government relies on is United States v. Roselli, 432 F.2d 879 (9th Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) which involved a conspiracy to violate 18 U.S.C. § 2314 (interstate transportation of stolen securities). While that case does hold that intent to transport securities in interstate commerce is not essential for conviction of a conspiracy and thus is contra to *Crimmins* (which it does not discuss) the court further found that the defendant was aware of the interstate activities in any event. Id. at 893. Moreover, the

court does cite Pereira v. United States, 347 U.S. 1, 12–13, 74 S.Ct. 358, 98 L.Ed. 435 (1954) where the Supreme Court's discussion clearly assumes that an agreement to transport stolen property in interstate commerce is necessary in order to find a conspiracy to violate Section 2314. In fact, in that case the dissent of Mr. Justice Minton, joined in by Justices Black and Douglas, is based on their belief that the government failed to establish this element with respect to one of the conspirators. Id. at 14–15, 74 S.Ct. 358.[3]

The convictions of Santa and Mercurio are reversed and dismissed. The convictions of Vilhotti and Maloney are affirmed on the substantive count and reversed and dismissed on the conspiracy count.

---

2. The distinction between the general criminal intent necessary for the completed act of monopolization under Section 2 of the Sherman Act and the specific intent requisite for the inchoate attempt or conspiracy to monopolize was again made clear by Judge Learned Hand in United States v. Aluminum Co. of America, 148 F.2d 416, 431–432 (2d Cir. 1945) which was decided just a few months after his decision in United States v. Bollenbach, *supra*.

3. The government's citation of United States v. Blassingame, 427 F.2d 329

(2d Cir. 1970), cert. denied, 402 U.S. 945, 91 S.Ct. 1629, 29 L.Ed.2d 114 (1971); United States v. Kaufman, 429 F.2d 240, 245 (2d Cir.), cert. denied, 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d 184 (1970) and United States v. Callahan, 439 F.2d 852, 862 (2d Cir. 1971), cert. denied, 404 U.S. 826, 92 S.Ct. 56, 30 L.Ed.2d 54 (1971) is not persuasive at all since the interstate intent discussion in each case involved the substantive count and not the conspiracy. It is conceded that no such intent is necessary for the completed crime under Section 659.