**UNITED STATES of America,**
**Appellee,**

v.

**Bruno BARONE and Louis DiBuono,**
**Appellants.**

**Nos. 857–858, Dockets 72–1476, 72–1477.**

United States Court of Appeals,
Second Circuit.

Argued June 15, 1972.

Decided Sept. 26, 1972.

Maurice M. McDermott, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. New York, Jeffrey Harris, John W. Nields, Jr., Asst. U. S. Attys., on the brief), for appellee.

H. Elliot Wales, New York City (Vincent W. Lanna, Yonkers, N. Y., on the brief), for appellants.

Before KAUFMAN, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge.

Appellant Barone was convicted by a jury in the United States District Court for the Southern District of New York of three counts of transmitting wagering information in interstate commerce, 18 U.S.C. § 1084 (1970),[1] and one count of conspiracy to violate that section. Appellant DiBuono was convicted only on a conspiracy count; two substantive counts involving him were dismissed by the trial court, and the jury acquitted him on two others. Appellants challenge the sufficiency of the evidence to support their convictions and a portion of the court's charge to the jury, and claim that their federal trials were barred by prior guilty pleas to state gambling offenses. In addition, Barone claims that certain inculpatory statements taken from him after his indictment, in the absence of counsel, were improperly admitted in evidence.

The Government's proof revealed a scheme that enabled persons wishing to place illegal bets to call answering services run by women in private apartments. The bettor would leave his telephone number, and periodically someone known only by the code name "Mr. Oscar" would call the answering service to get the telephone numbers of the persons who had called. "Oscar" would then telephone the bettors and complete the transaction. These facts were established by the testimony of several of the women who ran the answering services and a woman who had placed bets with one of them.

The evidence against DiBuono was that he had made the arrangements for getting a Patricia Benabe and an Elizabeth Lupi started in the answering service business in an apartment in Harrison, New York. From time to time he paid their salaries and he brought them twin double tickets for processing connected with his betting operations. DiBuono concedes that within the meaning of 18 U.S.C. § 1084 he "engaged in the business of betting or wagering." His contention on appeal is that there is no evidence that he had the knowledge, required to support a conspiracy conviction, that the conspiracy would include transmissions in interstate commerce. Cf. United States v. Vilhotti, 452 F.2d 1186, 1189–1190 (2d Cir. 1971), cert. denied, Maloney v. United States, 405 U.S. 1041, 92 S.Ct. 1314, 31 L.Ed.2d 582 (1972), and cases cited there.

The evidence against Barone was more extensive. He paid the rent on the apartment at which Mrs. Benabe and Mrs. Lupi ran their answering service. Mrs. Lupi testified that Barone's voice was the same as "Mr. Oscar's." Barone was also acquainted with a Marjorie Falco, who ran an answering service similar to that of Mrs. Benabe and Mrs. Lupi. On a few occasions he used her

---

1. "(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both."

telephone, and once he paid her telephone bill. At the time of his arrest he admitted being in the gambling business, and there was proof of interstate telephone calls to the Falco answering service.

The evidence was clearly sufficient to support Barone's conviction on each of the counts of which he was found guilty.

██ We find, however, that the evidence against DiBuono is insufficient to support his conviction. The appellants and the Government both assume, and we agree, that a conviction of conspiracy to violate 18 U.S.C. § 1084 requires a showing that the defendant knew or could reasonably foresee that interstate communication would be used in furtherance of the plan of action. See United States v. Vilhotti, supra. The district judge denied DiBuono's post-trial motion for judgment of acquittal on the conspiracy count on the ground that the proximity of the Benabe-Lupi answering service to the borders of Connecticut and New Jersey was sufficient to allow "the jury to find that the interstate element was anticipated by the conspirators." We cannot agree, at least on the facts of this case, that mere geographical location will supply the element of knowledge. None of our cases has gone so far. See United States v. Corallo, 413 F.2d 1306 (2d Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969); United States v. Marquez, 424 F.2d 236, 239 (2d Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970); United States v. Caci, 401 F.2d 664, 669 (2d Cir. 1968), vacated on other grounds, Randaccio v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Cordo, 186 F.2d 144, 147 (2d Cir.), cert. denied, Minkoff v. United States, 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686 (1951); United States v. Crimmins, 123 F.2d 271, 273 (2d Cir. 1941).

██ In the present case there was no showing that DiBuono *knew* that interstate telephone calls would be made.

The only evidence of an actual interstate phone call to the Benabe-Lupi answering service, the only service with which DiBuono was shown to have any connection, was the subject of count five of the indictment, of which both appellants were acquitted.

██ Appellant Barone argues that the admission of inculpatory statements taken from him at the time of his arrest violated the rule of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). After Barone was indicted, an FBI agent went to his home to arrest him. The agent orally advised Barone of his rights and showed him a form stating those rights and waiving the right to have counsel present. Barone signed the form, and then telephoned both his attorney and his bondsman. There was no testimony as to the content of these phone calls. Thereafter, apparently at least in part in response to interrogation by the agent, Barone admitted that he was a bookmaker, that he was acquainted with Mrs. Benabe and Mrs. Falco, and that he was paying the rent on the apartment in which Mrs. Benabe was conducting her answering service.

In Massiah v. United States the Supreme Court held that inculpatory statements deceptively elicited from an indicted defendant in the absence of counsel were inadmissible. The circumstances of the present case are quite different from the circumstances of *Massiah*. Here there was not only no deception but an express waiver of counsel signed by Barone, see Miranda v. Arizona, 384 U.S. 436, 475–476, 483–486, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and a telephone conversation between Barone and his attorney. We hold that *Massiah* is inapplicable.

██ Appellants' remaining contentions, which at this point are significant only in regard to Barone, require little discussion. It is claimed that the trial judge erred when, in charging the jury that the testimony of an accomplice should be "weighed with care," he failed

to specify which witnesses should be considered accomplices. Such a specification is not required. See United States v. Projansky, 465 F.2d 123, at 136 and n. 25 (2d Cir. 1972). We also see no merit in the appellants' claim that the accomplice testimony charge was incomplete in other respects. See United States v. Abrams, 427 F.2d 86, 90–91 (2d Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970); United States v. Cianchetti, 315 F.2d 584, 592 (2d Cir. 1963).

■ Appellants also claim that they were twice placed in jeopardy by being subjected to trial in a federal court after they were convicted of the same gambling offenses in a prior state proceeding. This argument is conclusively foreclosed by Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), and, contrary to appellants' argument, we find no evidence that the holding of that case has been "eroded."

Barone's conviction is affirmed; DiBuono's conviction is reversed.