**UNITED STATES of America,**

v.

**Reginald SATTERFIELD et al., Defendants.**

**No. 76 Cr. 376.**

United States District Court, S. D. New York.

July 8, 1976.

As Amended July 13, 1976.

For Opinion on Reargument July 22, 1976. See 417 F.Supp. 303.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for plaintiff; Robert Costello, Asst. U. S. Atty., New York City, of counsel.

Lawrence Feitell, New York City, for defendant Satterfield.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendant Satterfield brings this motion to suppress certain statements made to the Drug Enforcement Administration and the United States Attorney. The chronology of events is as follows:

On April 14, 1976 a superseding indictment was returned charging Satterfield with complicity in a conspiracy to sell heroin (one of his co-defendants having been indicted some 3 months previously), and a warrant was issued for his arrest. Two days later, on Friday, April 16, the warrant was executed at approximately 10:00 A.M. in front of the Fifth Avenue Armory, where the agents had arranged to have Satterfield, a tennis instructor, appear on the pretext of making an appointment for a tennis lesson.

The agents, after advising him of his Miranda rights and telling him that he had been indicted, took Satterfield to DEA headquarters where he gave a statement substantially admitting his involvement in the criminal conspiracy. During much of this time he was crying and whimpering. Immediately after that statement, Satterfield was taken to the United States Attorney's Office where he was again advised of his rights, the indictment against him was explained in detail, and he gave a statement virtually identical to the first one. He was then arraigned before the Magistrate, and was released on a personal recognizance bond to be co-signed by his brother. The brother was given until the following Monday to affix his signature.

Although the agents had indicated to Satterfield that the Magistrate would provide an attorney and one of them had helped him fill out the necessary form, the Magistrate ruled that he was financially ineligible and declined to appoint an attorney.

As Satterfield was leaving the courthouse, one of the agents suggested that if he wished to continue his cooperation he should come to DEA Headquarters on the following Monday and make a further

statement. He agreed to do so. Satterfield kept his Monday appointment at Headquarters and made a third statement repeating the first two—this time on tape.

We find the following determinative facts:

(1) Although the Miranda warnings were given on Friday, April 16 by the DEA agents, Satterfield was in no emotional state to be able to comprehend or intelligently waive his rights.

(2) Although the agents on April 16 advised Satterfield of his indictment he was then unable to comprehend its significance.

(3) By the time Satterfield reached the United States Attorney's Office he was sufficiently composed to understand the warnings and the significance of the indictment. However, the events at the United States Attorney's Office followed so closely on the heels of those at DEA Headquarters that Satterfield had no realistic opportunity to decide whether or not a change of course would be advisable.

(4) Satterfield was subject to no compulsion whatever to return to DEA Headquarters on Monday. On the contrary, he had ample opportunity to discuss his situation with his brother or anyone else.

(5) Satterfield was at no time subject to threats or abuse by any agent or officer of the United States.

The foregoing findings require the suppression of the two Friday statements, and with respect to the Monday statement, with crystal clarity present the question of the admissibility of a post-indictment statement given without advice of counsel. For reasons which follow we suppress that statement.

## DISCUSSION

This decision, of course, turns on a proper interpretation of *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. The government's position with respect to that decision is twofold. First, noting that the facts there before the Court involved surreptitious activity (eavesdropping on a conversation with a co-defendant) which might have been deemed to be overreaching, the government urges that *Massiah's* effect be limited to that type of conduct. Second, the government contends that, by making a statement after Miranda rights (including the right to counsel) had been explained to him, Satterfield waived his rights under *Massiah*. We reject both contentions.

With regard to the first argument, while it is true that the conduct involved in *Massiah* was surreptitious, it does not seem to us that any deceitful aspect of the prosecution's conduct was the gravamen of the decision. On the contrary, it appears to us that the Court was seeking to outlaw the taking of any uncounseled statement from an indicted defendant. In the first place, there can be no gainsaying that the conduct involved in *Massiah* (whether deceitful or not) would have been wholly lawful as to an unindicted suspect. In the second place, the Court's pointed adoption of the rationale of the concurring opinions in *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, strongly suggests that it was espousing those opinions' thesis that an indicted defendant was entitled to "all the procedural safeguards of the law" in any post-indictment dealings with the government. Thus, in concluding its discussion of *Spano,* the Court observed (377 U.S. at 204, 84 S.Ct. at 1202):

> "It was said [in the concurring *Spano* opinions] that a Constitution which guarantees a defendant the aid of counsel at such a trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less, it was said, might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.'"

The quoted language, it seems to us, is wholly inconsistent with the theory that the Court was reacting to the particular facts before it rather than establishing a rule of general application.

In support of its second contention that the circumstance that defendant made his statement after a full recitation of the Miranda warnings constituted a waiver of his right to counsel, the government cites *United States v. Barone* (2d Cir. 1972), 467 F.2d 247, 249; *Moore v. Wolff* (8th Cir. 1974), 495 F.2d 35, 37; *United States v. Crisp* (7th Cir. 1970), 435 F.2d 354, 358–59, *cert. denied,* 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116.

The Second Circuit decision in *Barone* does not support the government's position. On the contrary, in that case the court speaking through Judge Hays specifically noted that the defendant had conferred with his counsel on the phone after executing a formal waiver and before making any incriminating statement (467 F.2d at 249). In other words the defendant in *Barone*—unlike Satterfield here and the defendant in *Massiah*—had the opportunity to benefit by the advice of counsel before making his statement.

While the cited 7th and 8th Circuit cases clearly support the government's contention, we respectfully disagree. We prefer the views expressed by Judge Frankel in *United States ex rel. Lopez v. Zelker* (S.D. N.Y.1972), 344 F.Supp. 1050, *aff'd,* 2 Cir., 465 F.2d 1405, *cert. denied,* 409 U.S. 1049, 93 S.Ct. 529, 34 L.Ed.2d 501, and by Judge Friendly (dissenting)[1] in *United States v. Massimo* (2d Cir. 1970), 432 F.2d 324, 326. Both expressed doubt that the rights established by *Massiah* could ever be waived.[2]

■ Under our interpretation of *Massiah,* after indictment the advice of counsel can be waived only after such warnings and explanations as would justify a court in permitting a defendant to proceed *pro se* at trial.[3] In the first place, such an interpretation comports with the language and spirit of the above-quoted passage from the *Massiah* opinion. In the second place, it comports with the realities of life. Prior to indictment—before the prosecution has taken shape—there may be may reasons why a suspect might rationally wish to deal with agents without the intervention of counsel. By getting in their good graces and being useful to the government he might be able altogether to avoid indictment or any legal entanglement. No such opportunity is open to him after a grand jury has spoken. At that point he cannot make any arrangement with agents or prosecutor that is not subject to ultimate approval by the court, and counsel is obviously important to advise him on what terms such approval is likely to be forthcoming and how best to obtain it.

Clearly the events leading up to the statement here involved do not meet this test. On the contrary, the agents graphically described the defendant's confusion as to the advisable course to follow with respect to retaining counsel. Thus, for example, group supervisor Coleman testified on direct examination (Tr. 12):

"I asked him if he had an attorney to which he advised me—well, he asked my advice. He asked me if I thought an attorney was necessary since he agreed to cooperate and he was going to cooperate with us fully and tell us everything he knew."

Agent Coleman did not consider it his obligation to advise Satterfield about the valu-

---

1. The majority did not reach the point discussed by Judge Friendly. We refer to the thorough opinion of Judge Frankel in *Lopez* (344 F.Supp. at 1054) for a compilation of relevant authorities. Aside from the redundancy that would be involved in duplicating his scholarship, the limitations of time restrict us. The government has expressed its intention to appeal and hopes—by means of an expedited appeal—to get the case before the Court of Appeals in time for a decision before the adjourned date of this trial (November 15, 1976, practically the last date available in light of speedy trial considerations).

2. In *United States v. Duval* (2d Cir. 1976), 537 F.2d 15, 23 the court speaking through Judge Friendly (in Part IV of the opinion) raised questions as to the nature of the advice that must be given before an unindicted defendant could be questioned on his way to be arraigned before a Magistrate.

3. See *e. g. Faretta v. California* (1975), 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562.

able assistance an attorney might give to a cooperating defendant. Such an attorney would, at a minimum, have sought to learn of what cooperation Satterfield was capable before letting him put it all on tape and thus utterly destroy his bargaining position.

█ In conclusion we observe that this case lends itself to a declaration of principle precisely because all government agents and officers involved conducted themselves in an exemplary fashion.[4] The statement is suppressed not because any agent needs to be reproved, but simply because it cannot be said that an indicted defendant is being protected by "all the procedural safeguards of the law" if in an interrogating session he may waive counsel any more easily than he could in open court.[5]

Accordingly, having found defendant Satterfield's rights as established by *Massiah* to have been violated, we suppress his statements.

SO ORDERED.

---

**4.** Satterfield contends that the agents acted improperly in arranging the arrest in such fashion that both they and the Assistant United States Attorney would have ample time to interrogate him prior to the arraignment. However, given their belief that the resulting statements were admissible in evidence, the agents would have been derelict in their duty had they failed to take appropriate steps to obtain them. Of course, as the opinion makes clear (377 U.S. at 207, 84 S.Ct. 1199), the *Massiah* doctrine in no way inhibits agents or prosecutors from using any strategems that may be available to induce an indicted defendant to provide evidence against others. *Massiah* merely prevents, absent the advice of counsel, the use of the fruits of such strategems against the defendant himself. In other words, the *Massiah* rule does for a defendant at least part of what counsel would do if present. It permits him to cooperate under conditions such that—while he may or may not succeed in benefitting himself—he at least is protected from harm.

**5.** Clearly under our interpretation, the *Massiah* doctrine could not be satisfied—like the Miranda rule—by any formula printed on a card. Indeed it is difficult to conceive situations where post-indictment counsel could intelligently be waived. At the moment, the only such situation that comes to mind would be where an indicted defendant was given an opportunity to cooperate by involving a "higher up", and the circumstances were such that instant action was required and no delay for consultation possible.