19-3560
*United States of America v. Castelle*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of December, two thousand twenty.

PRESENT:
> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

United States of America,

*Appellee*,

v.                                                                              19-3560

Eugene Castelle, AKA Boobsie,

*Defendant-Appellant*.*

_____

---

* The Clerk of Court is respectfully directed to amend the caption as reflected above.

**For Appellant:**                              JACOB    FIDDELMAN,    (Hagan
                                                        Scotten and Karl N. Metzner, *on the
                                                        brief*), Assistant United States
                                                        Attorneys, *for* Audrey Strauss,
                                                        Acting United States Attorney for
                                                        the Southern District of New York,
                                                        NY.


**For Appellees:**                              RICHARD WARE LEVITT, Levitt &
                                                        Kaizer, New York, NY.


Appeal from the United States District Court for the Southern District of New York (Alvin Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

Defendant Eugene Castelle appeals his conviction and sentencing, which were entered after a jury found him guilty on charges of participating in an illegal gambling business, in violation of 18 U.S.C. §§ 1955 and 2, and RICO conspiracy, in violation of 18 U.S.C. § 1962(d). Castelle challenges several of the district court's evidentiary rulings and jury instructions at trial, as well as the sufficiency of the evidence on the RICO conspiracy charge and the district court's factual findings in support of a Guidelines enhancement at sentencing. We assume the

parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## *Discussion*

### I. Special Agent John Carillo's Expert Testimony

Castelle contends that the expert testimony provided by Special Agent John Carillo violated both the Federal Rules of Evidence and the Constitution's Confrontation Clause. For the first time on appeal, he also argues that some of the testimony amounted to improper bolstering of fact witnesses.

"We review evidentiary rulings for abuse of the district court's broad discretion, reversing only when the court has acted arbitrarily or irrationally." *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006) (internal quotation marks omitted). "Because it is a question of law whether an expert witness's testimony violated [the Confrontation Clause], our review is de novo." *United States v. Mejia*, 545 F.3d 179, 198–99 (2d Cir. 2008). Issues raised for the first time on appeal are subject to plain error review. *United States v. Marcus*, 560 U.S. 258, 262 (2010).

Under Rule 702, an expert may testify about "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony should

3

not merely summarize the case's facts, and must avoid communicating "out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of an expert opinion." *Mejia*, 545 F.3d at 198 (internal quotation marks omitted). Expert testimony likewise may not be "used exclusively to bolster the government witnesses' versions of the events." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994). Reviewed under this legal framework, none of the testimony challenged by Castelle requires reversal.

To start, Agent Carillo's testimony concerning the types of crimes committed by the Lucchese Family, as well as the Lucchese Family's structure and operational methods, did nothing more than provide jurors with the kind of general background information that we have permitted in the past. *See United States v. Locascio*, 6 F.3d 924, 937 (2d Cir. 1993) (holding that expert testimony on "the structure and operations of organized crime families" was properly admitted); *Amuso*, 21 F.3d at 1263–64 (permitting testimony on organization's terminology and structure because "the operational methods of organized crime families are still beyond the knowledge of the average citizen"). Nor was it problematic that Agent Carillo's knowledge was partly informed by otherwise inadmissible hearsay, as Castelle has not shown that Agent Carillo

4

"communicated out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of an expert opinion." *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007).

Castelle likewise fails to establish that Agent Carillo's expert testimony merely bolstered and mirrored testimony of fact witnesses. Indeed, Castelle's lead example of bolstering shows no such thing; it was not improper for Agent Carillo to testify as an expert about surveilling Lucchese Family members at social clubs and wakes, while also testifying as a fact witness concerning Castelle's attendance at social clubs and wakes with other Lucchese Family members. *See Amuso*, 21 F.3d at 1264 (explaining that some overlap in testimony is permitted).

Finally, even if it could be argued that the district court erroneously permitted Agent Carillo to testify as an expert, any error here was harmless given the overwhelming evidence – including recorded phone calls and photographs – establishing that Castelle was a made member of the crime family who committed the offenses charged.

## II. Evidence of Pennisi's Conviction and Domestic Violence

Castelle next argues that the district court abused its discretion by precluding cross-examination of cooperating witness John Pennisi on his

manslaughter conviction from 1990 and his assault on his girlfriend after he discovered that she had an affair with Castelle. Neither is grounds for reversal.

Just as the district court properly excluded the manslaughter conviction, which was more than ten years old and of limited probative value that did not "substantially outweigh[] its prejudicial effect," Fed. R. Evid. 609(b)(1), so too was the district court justified in excluding evidence concerning Pennisi's assault on his girlfriend after he learned of her affair with Castelle. Although Castelle argues that such evidence was relevant to show the intensity of Pennisi's jealousy and his strong motive to testify falsely against Castelle, the district court did not err in determining that cross-examination concerning the violence of Pennisi's initial reaction to the affair – which occurred nearly three years before trial and was directed against his girlfriend – had little relevance to determining whether Pennisi harbored contemporaneous bias and hostility against Castelle at the time of Pennisi's trial testimony. Given the highly prejudicial nature of the assault, in which Pennisi apparently knocked out his girlfriend's teeth, the district court did not abuse its discretion in determining that the testimony was of limited probative value and would be highly prejudicial.

Importantly, the district court permitted defense counsel to cross-examine Pennisi regarding the fact of the affair and his strong bias and hostility toward Castelle. The jury heard Pennisi admit to being "[v]ery angry" about Castelle's relationship with Pennisi's girlfriend, to disliking Castelle's character and personality, and to previously lying under oath. Suppl. App'x at 258, 267. The jury therefore had ample basis "to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002) (internal quotation marks omitted). Given the deference accorded to trial judges under Rule 403, we cannot say that the district court abused its discretion in precluding cross examination on Pennisi's prior acts of violence. *See United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012) (noting that, in the Rule 403 context, our review "is highly deferential in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice" (internal quotation marks omitted)).

### III. Jury Instruction on Illegal Gambling

Castelle also contends, for the first time on appeal, that the district court plainly erred in its instructions on the illegal gambling count when it failed to tell

the jurors "that they must *unanimously* agree that *five or more* persons participated" simultaneously in the illegal scheme at some point during the life of the conspiracy. Appellant's Brief at 62. We disagree.

Using language taken directly from the leading treatise on the subject, to which Castelle did not object, the district court instructed the jury that "[f]ive or more people . . . must have participated during the period you found that the gambling business was in substantially continuous operation." Suppl. App'x at 383 (quoting Leonard B. Sand et al., *Modern Federal Jury Instructions: Criminal*, Instr. 39-27 (2019)). While Castelle now insists that this instruction should have specified that five or more people must have participated in the criminal scheme at the same time, we need not decide that issue because the evidence introduced at trial clearly established that at least five individuals – Castelle, Grecco, Riotto, Vasilakis, and Zuccarello – simultaneously worked in the gambling business. *See, e.g.*, Suppl. App'x at 159, 161, 163, 274, and 559–569. Given the uncontroverted evidence, Castelle has not demonstrated that the allegedly erroneous jury

8

instruction "affected the outcome of the district court proceedings," and thus has not satisfied the plain error standard. *Marcus*, 560 U.S. at 262.

Castelle has also failed to establish any plain error in the district court's unanimity instruction. Although the court did not specifically charge the jury that it must agree on the number of participants, the court did provide a general unanimity instruction, which was clearly sufficient under the circumstances. *See United States v. Shaoul*, 41 F.3d 811, 818 (2d Cir. 1994) ("Even in circumstances where it might have been advisable . . . to give specific unanimity instructions, we have held that failure to give such instructions does not constitute plain error." (internal quotation marks and footnote omitted)).

## IV. Sufficiency of the Evidence Supporting the RICO Conspiracy

Castelle further argues that there was insufficient evidence to support his RICO conspiracy conviction. We again disagree.

We review de novo the district court's conclusion that sufficient evidence supported a conviction, viewing "the evidence presented in the light most favorable to the government" and drawing "all reasonable inferences in its favor." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). "[W]e will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if any rational

9

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pimentel*, 346 F.3d 285, 295 (2d Cir. 2003) (internal quotation marks omitted). Where, as here, a defendant raises a sufficiency-of-evidence challenge to a general verdict finding him guilty of a racketeering conspiracy, we must affirm the conviction if sufficient evidence established that the conspiracy involved two of the charged racketeering predicates. *See id.* at 297; 18 U.S.C. §§ 1961(5) (requiring two predicate acts), 1962(d).

Here, the evidence adduced at trial was more than sufficient to establish that the conspiracy involved the predicate act of illegal gambling in violation of New York State Penal Law § 225.10 – which Castelle does not contest. In addition, as discussed above, the evidence also demonstrated the separate predicate act of participating in an illegal gambling business in violation of 18 U.S.C. § 1955, since the gambling business in question involved five or more people.

There was also enough evidence for a jury to conclude that Castelle conspired to knowingly using a wire communication to transmit gambling information in interstate or foreign commerce. *See* 18 U.S.C. § 1084(a). Section 1084 requires proof that a defendant "knew or could reasonably foresee" that

10

interstate or foreign wire communications would be used to facilitate the criminal enterprise. *See United States v. Barone*, 467 F.2d 247, 249 (2d Cir. 1972). Here, the evidence showed that bookmaker Anthony Grecco and others partly ran their gambling business through a website hosted in Costa Rica. The evidence likewise demonstrated that Castelle was involved in the betting process and often directed Grecco to set up new betting accounts. In one recorded phone call, Grecco informed Castelle that they had been "shut off" for not making a payment, Suppl. App'x 573, which supported the reasonable inference that Castelle understood the nature of the operation and the fact that it was utilizing websites hosted outside the State of New York. *Cf. United States v. Muni*, 668 F.2d 87, 90 (2d Cir. 1981) ("The content of reasonable foreseeability must inevitably keep pace with advances in technology and general awareness of such advances.").

The government also introduced sufficient evidence to support a finding that Castelle conspired to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1342. While "we have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain," we have upheld convictions "where the deceit affected the victim's economic calculus or the benefits and burdens of the agreement," as well as

11

"where defendants' misrepresentations pertained to the quality of services bargained for." *United States v. Binday*, 804 F.3d 558, 570–71 (2d Cir. 2015). Here, it is undisputed that Castelle arranged with ACDM Construction to have a no-show construction job. ACDM, in turn, submitted regular timesheets to prime contractor Del-Sano Contracting, falsely reporting that Castelle worked about 170 days at the construction site. Castelle argues that Del-Sano nevertheless got what it bargained for because the contract provided for a fixed price that did not depend on who was working at the construction site. But the no-show job was hardly immaterial, as underscored by the fact that timesheets were routinely submitted by ACDM and reviewed by Del-Sano, whose project superintendent expressed concern that "things are not going as scheduled." Suppl. App'x at 575. Clearly, the economic calculus, benefits, and quality of services provided to Del-Sano were detrimentally affected by the fraud. *Binday*, 804 F.3d at 570–71.

## V. Evidence Supporting the Extortion Enhancement at Sentencing

Finally, Castelle argues that the district court improperly inflated his Sentencing Guidelines range when it erroneously concluded that he extorted money from Anthony Grecco. We disagree and find that the district court was

12

justified in treating Castelle's extortion of Grecco as relevant conduct at sentencing.

Extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). "[W]here an organized crime enterprise cultivates a reputation for violence and intimidation in achieving its conspiratorial goal of control throughout an industry or area," the fact finder "may reasonably consider that reputation in assessing whether payments were induced by the exploitation of existing fear without an explicit or implicit threat." *Coppola*, 671 F.3d at 242.

The evidence before the district court established that Castelle extorted money from Grecco by utilizing his tight connection with the Lucchese Family, which had a reputation for using violence to ensure that people paid their debts. For starters, as Grecco explained in a recorded phone call, he "had no choice" in using Castelle's protection services because the crime family had chosen Castelle to be Grecco's "partner." Suppl. App'x at 517. Although Castelle did almost nothing to advance the so-called partnership, he nevertheless demanded that Grecco pay significant sums of money – including $15,000 to oust Grecco's former "partner," 25% of Grecco's gambling profits, a $40,000 loan for Castelle's benefit

13

that Grecco had to repay, and yearly tribute money.   And while Castelle insists that his arrangement with Grecco was ultimately an improvement over the terms imposed by his prior extortionate "partner," the relative burdens of the two extortions are of no moment.   But for the implicit threat of violence that permeated the relationship, Grecco made clear that he would have chosen "to get rid of this guy."   *Id.* at 517.   Indeed, once it became apparent that Castelle "was in trouble" and no longer had the support of the Lucchese Family, Grecco remarked that he would "get rid of [Castelle] right away and end it."   App'x at 151–52.   Based on the evidence in the record, we cannot say that the district court erred in finding that Castelle extorted Grecco.

### *Conclusion*

We have considered Castelle's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14